(March 31, 1917.)

## CHARLES JAIN and JESSIE JAIN, His Wife, and W. E. TIPTON and NELLIE TIPTON, His Wife, Appellants, v. WILLIAM PRIEST and MARIE PRIEST, His Wife, Respondents.

[164 Pac. 364.]

HABEAS CORPUS—JUDGMENT OF DISTRICT COURT APPEALABLE—JURISDICTION OF SUPREME COURT TO MAKE WRIT RETURNABLE BEFORE ANY DISTRICT COURT — CUSTODY OF CHILDREN — EVIDENCE — PRIVILEGED COMMUNICATIONS—GUARDIANSHIP OF MINOR BY BENEVOLENT CORPORATION—BY PARENTS—AUTHORITY FOR ORDER OF ADOPTION—JURISDICTION OF PROBATE COURT—NOTICE OF PROCEEDINGS—CONFLICT OF EVIDENCE.

1. The judgment of a district court in a *habeas corpus* proceeding, involving the custody of a child, is appealable.

2. The supreme court is authorized to make a writ of *habeas corpus* issued by it returnable before any district court.

3. Where children have been removed from the custody of their parents by the probate court because of certain faults of the parents, specified in the findings and order of the court, and the question as to whether the parents have overcome these faults and permanently reformed arises in a subsequent proceeding by which the

parents attempt to regain the custody of the children, the material evidence is evidence as to the conduct of the parents since the children were taken from them, and the exclusion of evidence of their conduct before that time on the ground of immateriality is not error.

4. Even if certain testimony of a physician should have been excluded on the ground of privileged communication, still the admission of it is not reversible error where the patient, who was also a witness, testified on her cross-examination to substantially everything to which the doctor testified. As to whether the testimony should have been admitted over the objection of appellant, there being nothing in the record to show that the witness expressly consented that the testimony might be given, *quaere.*

5. When a benevolent or charitable corporation is made the guardian of a child by order of the probate court under the provisions of an act of the 10th session, approved March 6, 1909, Sess. Laws 1909, p. 38, the probate court has the same control over such corporation as guardian as over any other guardian. Such guardianship may be terminated by said court in the same manner in which any other guardianship may be terminated.

6. While such corporation may voluntarily resign the guardianship or apply to the court for permission to surrender the children to the parents, the ultimate decision as to whether the guardianship shall be terminated or the children surrendered to the parents is with the probate court in each case.

7. Whenever it appears to the probate court on application of the ward or otherwise that the guardianship is no longer necessary, it may be terminated. Reasonable notice of the proceedings and termination of the guardianship should be given the guardian.

8. That certain order made by the probate court for Shoshone county in this case on October 2, 1915, has the force and effect of an order terminating the guardianship of the Idaho Children's Home Finding and Aid Society. Under the facts of this case the society had sufficient notice of the proceedings to be bound by such order.

9. Such benevolenet or charitable corporation, as guardian of minor children, has no authority to consent to their adoption when the children are not surrendered to it by the parents, but are committed to it as guardian by the probate court in a proceeding by which they are taken from the parents without their consent.

10. Under sec. 2703, Rev. Codes, a probate judge is not authorized to make an order of adoption of children without the consent of their parents, on the ground that such parents have been judicially deprived of their children on account of neglect, unless it appears in the record before such judge that such is a fact.

11. A probate judge is not authorized to make an order of adoption of children without the consent of the parents on the ground that the parents have been judicially deprived of the custody of their children on account of neglect, unless it appears in the record before him that the parents have been permanently and absolutely deprived of such custody by a final and unconditional judgment of a court. An order of a probate court temporarily depriving the parents of the custody of their children, but granting them an opportunity to reclaim the children upon a proper showing of reform, is not such a judgment as dispenses with the necessity for the consent of the parents to an adoption proceeding.

12. That certain order of the probate court of Shoshone county in this case made on October 2, 1915, by which the children of appellants were removed from their custody and committed to the custody of the Idaho Children's Home Finding and Aid Society, as guardian, does not permanently and absolutely deprive the parents of the custody of their children, and is not such a final and unconditional judgment as dispenses with the necessity of the consent of the parents to adoption proceedings.

13. As to whether the parents must in all cases be notified of adoption proceedings in order to make the same binding upon them, *quaere.*

14. The parents of minor children, being themselves competent to transact their own business, and not otherwise unsuitable, are entitled to the guardianship and custody of said children. (Rev. Codes, sec. 5774.)

15. There being a substantial conflict in the evidence as to whether the parents have reformed and are now suitable persons to have the custody of their minor children, the findings of the district court in favor of the appellants on that point will not be disturbed by this court on appeal.

[As to the custody of children and to whom it should be awarded under *habeas corpus,* see note in 20 Am. Dec. 330.]

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. William W. Woods, Judge.

On application of William Priest and Marie Priest, writs of *habeas corpus* were issued out of this court for William Priest and Ruth Priest, minor children of said applicants, and made returnable in the District Court of the First Judicial District.

Appeal is taken from the judgment of that court ordering the children returned to their parents. *Affirmed.*

John Nisbet, for Appellants.

The children's welfare is the guiding star. (*Adrino v. Yates,* 12 Ida. 618, 87 Pac. 787; *Schiltz v. Roenitz,* 86 Wis. 31, 39 Am. St. 873, 56 N. W. 194, 21 L. R. A. 483; *Jacob v. Sheets,* 99 Ind. 328; *In re Hamilton,* 66 Kan. 754, 71 Pac. 817; *Filbert v. Schroeder,* 37 Neb. 571, 56 N. W. 307; *Rice v. Rice,* 21 Tex. 58; *In re Hickey,* 85 Kan. 556, 118 Pac. 56, 41 L. R. A., N. S., 564; *In re Sharp,* 15 Ida. 120, 96 Pac. 563, 18 L. R. A., N. S., 886.)

The probate court of Shoshone county made an order removing the Children's Home Finding and Aid Society from its guardianship, *ex parte,* and without in any manner notifying the guardian of such proceedings. Before this order could be binding on the society it would be necessary for the children to be in Shoshone county at the time of the filing of the petition; there must be a complaint to the probate court and a showing that the children are not being properly cared for; the guardian must have a reasonable notice of the proceeding. (*In re Sharp,* 15 Ida. 120, 96 Pac. 563, 18 L. R. A., N. S., 886; 1909 Sess. Laws, sec. 1, subn. (d), p. 39.)

Under sec. 2703, Rev. Codes, the guardian could consent to the adoption of the children, since the parents had been deprived of the children on account of their neglect of the children and their immoral conduct. (*In re McRae,* 189 N. Y. 142, 12 Ann. Cas. 505, 81 N. E. 956.)

Featherstone & Fox, for Respondents.

The jurisdiction of the supreme court in issuing a *habeas corpus* writ pursuant to its constitutional and statutory authority is not limited to the jurisdiction of the district where the children are. (*People v. Booker,* 51 Cal. 317.)

The probate courts are courts of original jurisdiction in the matter of guardianship (*In re Sharp,* 15 Ida. 120, 96 Pac. 563, 18 L. R. A., N. S., 886; secs. 3840, 3842, 3810, Rev. Codes),

and courts of record. (*Dewey v. Schreiber Implement Co.,* 12 Ida. 280, 85 Pac. 921.)

An order for adoption is not a judgment. (*In re Williams,* 102 Cal. 70–76, 41 Am. St. 163, 36 Pac. 407; *Estate of Camp,* 131 Cal. 469, 82 Am. St. 371, 63 Pac. 736; *Estate of Stevens,* 83 Cal. 322, 17 Am. St. 252, 23 Pac. 379.)

It is only in cases of the most imperative necessity where it appears that serious and permanent detriment to the rights and interest of the child are threatened, that courts will deprive the father and mother of the custody of the children. (*In re Wilson* (N. J.), 55 Atl. 160, 162; *Markwell v. Pereles,* 95 Wis. 406, 69 N. W. 798; *Terry v. Johnson,* 73 Neb. 653, 103 N. W. 319; *Van Auken v. Wieman,* 128 Iowa, 476, 104 N. W. 464.)

Where the evidence is conflicting, a finding will not be disturbed. (*Cameron Lumber Co. v. Stack-Gibbs Lumber Co.,* 26 Ida. 626, 144 Pac. 1014; *Jensen v. Bumgarner,* 28 Ida. 706, 156 Pac. 114; *Pomeroy v. Gordan,* 25 Ida. 279, 137 Pac. 888; *Wolf v. Eagleson,* 29 Ida. 177, 157 Pac. 1122.)

An order appointing a guardian, or for the custody of a child, is temporary. (29 Cyc. 164; *Turner v. Turner,* 93 Miss. 167, 46 So. 413; *McGough v. McGough,* 136 Ala. 170, 33 So. 860; *Patten v. Shapiro,* 154 S. W. 687.)

Due process of law demands notice and an opportunity to be heard. (*Mix v. County Commrs.,* 18 Ida. 695, 112 Pac. 215, 32 L. R. A., N. S., 534; *Eagleson v. Rubin,* 16 Ida. 92, 100 Pac. 765; *Ex parte Martin,* 29 Ida. 716, 161 Pac. 573; *Scott v. McNeal,* 154 U. S. 34–51, 14 Sup. Ct. 1108, 38 L. ed. 896; *Sullivan v. People,* 224 Ill. 468, 79 N. E. 695; *Ex parte Livingston,* 151 App. Div. 1, 135 N. Y. Supp. 328.)

McCARTHY, District Judge.—This case involves the question of the right to the custody of Ruth Priest and William Priest, the minor children of William Priest and Marie Priest, the respondents. The appellants, W. E. Tipton and Nellie Tipton, claim right to the custody of Ruth Priest, and the appellants, Charles Jain and Jessie Jain, claim right to the custody of William Priest. Two petitions for writs of *habeas*

*corpus* were filed in the supreme court by the parents, one alleging that Ruth Priest is unlawfully detained by Mr. and Mrs. Tipton, and the other alleging that William Priest is unlawfully detained by Mr. and Mrs. Jain. A writ was issued in each case and made returnable in the district court of the first judicial district, before Honorable William W. Woods, District Judge. The two cases were consolidated for trial, and the district court ordered the children returned to their parents. From that order and judgment of the district court an appeal is prosecuted to this court by Mr. and Mrs. Tipton and Mr. and Mrs. Jain.

In September, 1914, a petition was filed in the probate court for Shoshone county, alleging that the appellants were not proper persons to have the care and custody of said minor children, and praying that a citation be issued by said court to appellants, requiring them to show cause why said children should not be removed from their custody and control and surrendered to the Idaho Children's Home Finding and Aid Society and treated as wards of the court. A hearing was had. The court found that the appellants were at that time unfit and improper persons to have the control and custody of the said children, and adjudged that the said children should be removed from the custody and control of the appellants and surrendered to the Idaho Children's Home Finding and Aid Society, to be treated as wards of the court. The Idaho Children's Home Finding and Aid Society will hereafter be referred to in this opinion as the society. The children were taken to the branch home of the society at Lewiston, Idaho. The probate judge, the appellants, the representative of the society at Lewiston and everyone else concerned understood that the order was not a final order, permanently depriving the parents of the custody of the children, but merely an order temporarily depriving them of such custody until such time as they should reform and convince the court that they were again entitled to the children.

On Oct. 2, 1915, the probate judge, upon petition of the parents, found that they had reformed and were proper persons to have the care and custody of their children, and made

a written order to the effect that the children should be removed from the custody of the society and returned to the parents. On the same day he wrote a letter to the representative of the society at Lewiston, inclosing a copy of the order. The representative at first acquiesced in this action, as shown by his letter of Oct. 4th. Having later heard some disquieting rumors concerning the parents, the probate judge, on Oct. 7th, sent a telegram to the representative telling him to hold the children, that other developments made it necessary to revoke the order for their return.

On Oct. 11th, the society, through its state superintendent, consented to the adoption of Ruth Priest by Mr. and Mrs. Tipton, and of William Priest by Mr. and Mrs. Jain. On Oct. 15th, adoption proceedings were had in the probate court for Latah county, by which the Tiptons adopted Ruth Priest and the Jains adopted William. The Jains and Tiptons were residents of Latah county; by permission of the society, Ruth had been living with the Tiptons and William had been living with the Jains for some months prior to the adoption.

On Oct. 11th, the probate judge having satisfied himself that the rumors about the parents were unfounded, wrote the representative of the society stating in effect that after investigation he had decided the children should be returned to the parents, and directed that arrangements be made for that purpose. The society replied that the children had been adopted and that it no longer had control over them. Thereafter the parents sued out writs of *habeas corpus,* resulting in the proceedings above mentioned.

The first question which arises in this case is whether a judgment of a district court in a *habeas corpus* proceeding involving the custody of a child is appealable. While the question is not raised by either of the parties to the action, we think that it is squarely raised by the proceedings and that it is the duty of the court to take notice of it. Sec. 4807, Rev. Codes, as amended by chap. 111, Sess. Laws 1911, provides that an appeal may be taken to the supreme court from a final judgment of the district court in an action or special proceeding commenced in the court in which the same is ren-

dered. This relates only to civil actions or special proceedings of a civil nature. A proceeding in *habeas corpus* to determine the right to the custody of a child is a proceeding of a civil nature, and more especially of an equitable nature. (*Andrino v. Yates,* 12 Ida. 618, 87 Pac. 787; *Harrison v. Harker,* 44 Utah, 541, 142 Pac. 716; *Telschek v. Fritsch,* 38 Tex. Cr. 43, 40 S. W. 988; *Ex parte Calvin,* 40 Tex. Cr. 84, 48 S. W. 518; *Hall v. Whipple* (Tex. Civ.), 145 S. W. 308–310.)

The judgment or order of the court is a final judgment in the sense that by it the parties to the action are concluded as to the particular issues presented. (*Bleakley v. Smart,* (Kan.), 11 Ann. Cas. 125, 87 Pac. 76; *Cormack v. Marshall,* 211 Ill. 519, 1 Ann. Cas. 256, 71 N. E. 1077, 67 L. R. A. 787; *Hall v. Whipple, supra; Clifford v. Williams,* 37 Wash. 460, 79 Pac. 1001; *In re Hamilton,* 66 Kan. 754, 71 Pac. 817.) We are of the opinion that the judgment of the court in such a proceeding is a final judgment within the purview of our statute relating to appeals.

We conclude that an appeal lies from the judgment of the district court in such a proceeding. (*Stewart v. Paul,* 141 Ala. 516, 37 So. 691; *Bleakley v. Smart, supra; Hall v. Whipple, supra; State v. Baird & Torrey,* 19 N. J. Eq. 481; *Jamison v. Gilbert,* 38 Okl. 751, 135 Pac. 342, 47 L. R. A., N. S., 1133; and other cases cited above.)

The court is not called upon to decide, and does not decide, whether an appeal will lie to this court from the final judgment of the district court in the ordinary *habeas corpus* proceeding involving the legality of the imprisonment of a party by virtue of the commitment of a court.

The specifications of error, so called, are very general, and this court feels it is called upon to specifically notice only those points which counsel has attempted to support by argument or citation of authorities in the briefs or on the argument.

It is contended that the district court of the first judicial district had no jurisdiction, and that the case should have been sent to the district court for Latah county, in which

county the children were residing. Under secs. 3816 and 8342, Rev. Codes, the supreme court had the authority to make the writ returnable before any district court, and in this case it made it returnable before the district court, where a hearing could be had with the greatest degree of convenience to the witnesses.

It is contended that the court erred in refusing to permit the introduction of testimony relative to the conduct of William and Marie Priest prior to the time that the children were removed from them. Such testimony was offered for the purpose of showing the extent to which the parents were addicted to the use of intoxicating liquor and other bad habits, as tending to show whether or not it would be possible for them to have reformed as claimed. The principal question of fact in the case is whether they had reformed. The findings and order of the probate court stand as evidence against the parents, and the burden was upon them to show that they had corrected the serious faults set forth in said findings. The order of the probate court could not be collaterally attacked by either party to this proceeding. It does not seem, however, that admitting such testimony for the purpose stated, would have had the effect of making a collateral attack upon said order. However, the principal question being whether the parents had reformed, it seems that the material evidence upon the point is evidence as to their conduct since the children were taken from them. From the record in this case we do not think that testimony as to their conduct before that time was sufficiently material to require that it be admitted. The rejection of such testimony was, therefore, justified on the ground of its immateriality.

The alleged error in permitting witnesses to testify relative to what happened in the proceeding in the probate court of Latah county at the time of the alleged adoption of the children is not material, because this court does not think that the mere fact that the children and parties were not examined separately, if it be a fact, would of itself invalidate the proceedings.

No objection to the testimony of Dr. Dettman on the ground of privileged communication was made in the trial court, and that point cannot be raised for the first time in this court. We do not consider it necessary to pass upon the question as to whether or not the testimony of Dr. Lindsey should have been admitted, for the reason that he testified only in regard to Mrs. Ella Rivers, and she herself on cross-examination admitted practically everything to which the doctor testified, she stating that she had been a slave to the morphine habit for 29 years and six months. In view of this fact the admission of the doctor's testimony, even if erroneous, could not be prejudicial or reversible error.

Most of the other points raised by appellants relate to the question of the validity and effect of the several proceedings had in the probate court, to wit: First, the original proceedings by which the children were taken from their parents and committed to the custody of the Children's Home Finding and Aid Society by order of the probate court for Shoshone county; second, the order of the probate court for Shoshone county by which the guardianship of the society was revoked and the children were ordered returned to their parents; third, the order of adoption of the probate court for Latah county.

We will first consider the force and effect of the order committing the children to the custody of the society. It is ordered by the court that the said children be removed from the custody and control of their parents and surrendered to the society, to be treated as wards of the court. By using the words "wards of the court," it would seem that the probate court intended to retain some control over the children. The probate courts have jurisdiction in guardianship matters. (Const., art. 5, sec. 21.) For this purpose they are courts of general jurisdiction. (*In re Brady,* 10 Ida. 366, 79 Pac. 75; *Ex parte Sharp,* 15 Ida. 120, 96 Pac. 563, 18 L. R. A., N. S., 886.) The legislature has no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a co-ordinate branch of the government. (Const., art. 5, sec. 13.) By the order of the

probate court, which was made pursuant to the provisions of sec. 2, Sess. Laws 1909, pp. 39, 40 and 41, the society was made the guardian of the children. By virtue of its general jurisdiction the probate court had the same control over the society as guardian as it would have over any other guardian, and this power was one which the legislature could not take from the court. In the latter part of said section 2 it is provided, that the society shall continue to be the guardian during the minority of the children, unless the guardianship is canceled by the board of directors of the society. Said provision cannot have the effect of depriving the probate court of its control over the society as guardian, because to give it such effect would be to invade the jurisdiction of the probate court in violation of the constitution.

Sec. 3 of said act, on page 41, provides that the parents may petition the board of directors of the society, asking that the children be returned to them on the ground that they have reformed, or are in condition to properly care for the children, and if the board, after an investigation, deem it for the best interests of the child, it may be returned to its parents, and the guardianship of the society shall terminate, and the parents shall resume their natural relationship to such child. Such provision cannot have the effect of vesting jurisdiction to decide that the child shall be returned to its parents, exclusively in the board of directors of the society and of depriving the probate court of jurisdiction to decide such matter, because to give it such effect would again be an unconstitutional invasion of the powers and jurisdiction of the probate court. The board of directors may decide for the society whether or not it desires to voluntarily resign the guardianship or to return the children to their parents, but the ultimate decision in each case is with the probate court. The probate court had the same control over the society as guardian as it would have over any other guardian, and it had jurisdiction to revoke the guardianship of the society and return the children to their parents, if a proper showing were made.

Under sec. 5822, Rev. Codes, a guardian of any person may be discharged by the probate court when it appears to the court, on the application of the ward, or otherwise, that the guardianship is no longer necessary. Under this provision the probate court had authority to discharge the society as guardian of the children and order them returned to their parents at any time when it appeared to the court that the guardianship of the society was no longer necessary. If the parents convinced the probate court, by a proper showing, that they had reformed and were suitable persons to again have custody of their children, then the guardianship of the society would be no longer necessary, and the court could and should discharge the society and return the children to their parents. The statute does not expressly provide for any notice to the guardian before terminating the guardianship. In this it differs from the preceding section (5821, Rev. Codes), concerning the removal of a guardian on the ground of being incapable or unsuitable. That section provides that such notice shall be given to the guardian as the court may require. We think that the nature of the proceeding requires a reasonable notice to the guardian when terminating the guardianship, even though it is not expressly required by the statute. In this case no formal notice was given to the guardian. However, it appears that on Oct. 2, 1915, upon petition of the parents, and after investigation, the probate judge made a written order to the effect that the children be removed from the custody of the society and returned to the parents. He wrote a letter to the representative of the society at Lewiston, inclosing a copy of the order, and telling him that the children should be returned to their parents. The representative at first acquiesced in this action, as shown by his letter of Oct. 4th. Having later heard some disquieting rumors concerning the parents, the probate judge sent a telegram on Oct. 7th to the representative, telling him to hold the children, that other developments made it necessary to revoke the order for their return. Without waiting to hear further from the probate judge, the society consented to the adoption of the children, and instead of holding them as the

telegram directed, the adoption proceedings were allowed to take place. On Oct. 11th the probate judge again wrote the representative of the society, telling him that after investigation he had found the rumors about the parents to be unfounded; that he had decided the children should be returned to their parents, and that arrangements should be made to that end.

The order of Oct. 2d was in effect an order terminating the guardianship and discharging the society as guardian. There was no formal hearing of the matter. No formal notice was given the society. However, an informal notice was given and its representative at Lewiston was apprised of the fact that the probate court had terminated its guardianship and the reasons for such action. Under the circumstances we think the society had sufficient notice of the order to make that order binding upon it. If the society desired to be heard in objection to the petition of the parents, or the order of the court, it should have made such objection in the probate court for Shoshone county. It would then have been the duty of the court to hear such objection. Upon receipt of the telegram on the 7th, the society should have held the children as directed, instead of putting them beyond its control.

However, the society is not a party to this proceeding. The appellants base their right to the custody of the children upon the orders of adoption made by the probate court for Latah county. Under the provisions of the act of 1909, the society has authority to receive, control and dispose of children under eighteen when the father, mother or person legally entitled to act as their guardian shall surrender them in writing to the society, or when the person legally authorized to make such surrender is not known and a notice is published in a newspaper. When a child shall have been so surrendered and such child shall have been accepted by such society, then (but not otherwise) the rights of its natural parents or of the guardian of its person (if any) shall cease, and such corporation shall become entitled to the custody of such child, and shall have authority to care for and educate

such child or place it temporarily or permanently in a suitable home in such manner as shall best secure its welfare. Such corporation shall have authority when such child has been surrendered to it in accordance with any of the preceding provisions, and it is still in its control, to consent to its adoption under the laws of Idaho. These provisions are all in sec. 1 of the act. In cases arising under sec. 2, where a child is taken from the parents without their consent on the ground that they are not proper persons to have custody of it, the law does not give the society power to consent to the adoption of the child, nor does it provide that the rights of the natural parents shall cease. In such cases the society simply becomes the guardian of the child, subject to the control of the probate court as heretofore explained. In the present case, the children were not surrendered by the parents, but were removed from their custody by the court without their consent; the case therefore comes, not within sec. 1 but within sec. 2. The society consented to the adoption of the children; the parents did not consent, and in fact were not notified. The adoption proceedings cannot be upheld by virtue of any of the provisions of the law of 1909. The appellants fall back upon the provisions of sec. 2703, Rev. Codes, in relation to adoption. It provides that a legitimate child cannot be adopted without the consent of its parents, except that consent is not necessary from a father or mother who has been judicially deprived of the custody of the child on account of cruelty or neglect. It is claimed that these parents had been judicially deprived of the custody of their children by the order of the probate court for Shoshone county on account of neglect, and that therefore they were not entitled to notice of the proceedings. It appears from the proceeding in the probate court for Latah county that the action of the court was based upon the consent of the society to the adoption, and not upon any allegation or proof that the parents had been judicially deprived of the custody of their children on account of neglect. In order to authorize the probate court to make an order of adoption without the consent of the parents, it must appear in the record before that court that the case

comes within some of the exceptions mentioned in the statute. This, we think, is a jurisdictional requirement, and must be complied with in order to make the order valid. No such showing was made before the probate court in this case, and therefore the order, made without the parents' consent, was invalid. (*Parsons v. Parsons*, 101 Wis. 76, 70 Am. St. 894, 77 N. W. 147.)

The question as to whether the parents of a child must in all cases be notified of adoption proceedings is a difficult one, as to which the authorities do not agree. Conceding that in the cases mentioned in sec. 2703, Rev. Codes, the consent of the parents to the adoption is not necessary, there is still a question as to whether they should not be notified of the proceedings in order to have an opportunity to show whether or not their consent is necessary. It is indeed drastic to hold that the natural parents may be permanently deprived of their status of parentage and its accompanying rights by a proceeding of which they have no notice. Some authorities seem to have gone this far; some have refused. We do not pass on this vexing question, for the reason that it is not necessary to do so for the purpose of this case.

Even if it should be conceded that the parents were not entitled to notice of adoption proceedings in case they had previously been judicially deprived of the custody of their children on account of neglect, we do not think that this is such a case. When the statute says that the consent of the parents is unnecessary where they have been judicially deprived of custody of their children on account of neglect, we construe it to mean cases where they have been finally and permanently deprived of such custody by a final, absolute and unconditional judgment of the court. In view of the language used in the order of the probate judge for Shoshone county, and under all the facts of this case, we do not think that such order was a final and unconditional judgment, absolutely and permanently depriving the parents of the custody of their children. (*Ex parte Martin*, 29 Ida. 716, 161 Pac. 573.)

Our conclusion is that the probate court of Latah county had no authority to make the orders of adoption without no-

tice to the parents under the facts of this case, and that the orders of adoption are not binding upon the parents.

From the views above expressed in regard to the several proceedings in the probate court for Shoshone county and the probate court for Latah county, it follows that the legal rights of the parties, so far as the custody of the children is concerned, are not finally concluded by any of said proceedings. Sec. 5774, Rev. Codes, provides that either the father or mother of a minor, being themselves respectively competent to transact their own business, and not otherwise unsuitable, must be entitled to the guardianship of the minor. This section is construed and upheld by this court in *In re Crochcron*, 16 Ida. 441, 101 Pac. 741, 33 L. R. A., N. S., 868. In that case the court, in referring to its former decision in *Andrino v. Yates*, 12 Ida. 618, 87 Pac. 787, makes it clear that it is only where the legal right of the parent to the custody of the child is not clear that the child can be permitted to the custody of another on the ground that it will be better cared for by such other. If the parent fulfills the requirements of sec. 5774, he is entitled to the custody of his child, even though another person may be even more suitable to have the custody. The rights of these parents not being affected by the orders of adoption, they are entitled to the custody of the children if the evidence shows that they are now competent to transact their own business and not otherwise unsuitable. Upon these questions the lower court found in favor of the respondents.

"It is the settled law of this state that an appellate court will not disturb the findings or judgment of the trial court where there is a substantial conflict of the evidence. This rule applies with equal force to actions of law and suits in equity, where a trial is had on oral evidence." (*Smith v. Faris-Kesl Const. Co.*, 27 Ida. 407, 150 Pac. 25, and other Idaho decisions there cited.) We hold this rule applies to a *habeas corpus* proceeding of a civil nature to determine the right to the custody of children as well as to other actions at law or suits in equity. Upon the question as to whether these parents have reformed and are now proper persons to have the custody

of their children in view of the requirements of the statute, there is a substantial conflict in the evidence, and therefore the findings and judgment of the trial court will not be disturbed by this court.

The decision of the district court, affirmed by this court, is to the effect that the parents are now entitled to the custody of their children. The parents must understand that their right to maintain such custody in the future depends upon whether they continue to conduct themselves in such a way as to deserve it.

The judgment of the district court is affirmed.

Budge, C. J., and Rice, J., concur.