(May 23, 1919.)

## J. P. WALKER, Appellant, v. ELI EDWARDS and FERN EDWARDS, Respondents.

[181 Pac. 932.]

GUARDIAN AND WARD—HABEAS CORPUS—SUFFICIENCY OF EVIDENCE.

1. In the exercise of its discretion in determining to whom the custody of a child shall be awarded, in a case like the one here under consideration, the trial court will look to and be governed by the welfare of the child.

2. In cases of this kind the rule applies that the judgment will not be disturbed because of conflict in the evidence if there is sufficient proof, if uncontradicted, to sustain it.

[As to natural guardian, see note in 89 Am. St. 276.]

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Application for writ of *habeas corpus* to procure custody of a child. The writ was issued and, after hearing, was quashed. *Affirmed.*

Scatterday & Van Duyn, for Appellant.

The guardian is entitled to custody of ward if proper person. (*In re Crocheron's Estate*, 16 Ida. 441, 101 Pac. 741, 33 L. R. A., N. S., 868; *Watts v. Lively* (Tex. Civ. App.), 60 S. W. 676; *Rust v. Vanvacter*, 9 W. Va. 600; *Andrino v. Yates*, 12 Ida. 618, 87 Pac. 787; *Guardianship of Salter*, 142 Cal. 412, 76 Pac. 51; *In re Martin*, 29 Ida. 716, 723, 161 Pac. 573; *In re Galleher*, 2 Cal. App. 364, 84 Pac. 352.)

Walter Griffiths, for Respondents.

The welfare of the child is the consideration of first importance, in determining whether or not a claimant has a legal right to the custody of a child. (*Andrino v. Yates*, 12 Ida. 618, 87 Pac. 787; *In re Bullen*, 28 Kan. 781; *In re Gates*, 95 Cal. 461, 30 Pac. 596.)

MORGAN, C. J.—Appellant applied to the district court for a writ of *habeas corpus* alleging, among other things, that he was the guardian of the person of Mary Bush, an infant, who was under the unlawful control and restraint of respondents. The writ was issued and respondents answered the allegations in the petition. At the hearing many witnesses were examined, and the judge questioned the child, who was between ten and eleven years old, in private. Findings of fact were made and judgment entered that the child be returned to the care and custody of respondents. The appeal is from the judgment.

The controlling facts found are as follows: That appellant is the guardian of Mary Bush; that her parents died in January, 1915, leaving three children, of which Mary is the oldest; that her mother, who survived the father by a few days, requested appellant to take the children and find suitable homes for them; that the parents desired the children brought up in the teachings of the religious denomination to which they and appellant belonged; that respondent, Fern Edwards, is of that sect, the other respondent, her husband, is not but attends its services; that before the death of the mother, appellant placed Mary in the home of a neighbor until a permanent home could be found for her; that she remained there until May, 1915, when, with the consent of appellant and his wife, she was placed in custody of respondents with the request that they provide her a permanent home; that she was received into their home upon such request and that they have at all times since then provided her with "the necessaries, comforts and pleasures of life, supplied her with excellent educational facilities, medical aid, proper home training, and in all respects treated her as their own child, until there has at this time grown up feelings, ties and relations between this child and her adopted parents which cannot now be broken by separation without inestimable injury to the welfare of the child"; that respondents have the inclination and ability to provide her with all necessary mental, moral and physical training required by a child of

her age and temperament and a home which cannot, under the circumstances, be excelled; that she has no property and it is for her best interest and welfare that she remain in the care and custody of respondents. These findings are supported by the evidence.

In a case of this kind the trial court will, in the exercise of its discretion, look to and be governed by the welfare of the child (*Andrino v. Yates,* 12 Ida. 618, 87 Pac. 787; *In re Martin,* 29 Ida. 716, 161 Pac. 573; *Allen v. Williams,* 31 Ida. 309, 171 Pac. 493), and the rule applies that the judgment will not be disturbed because of conflict in the evidence if there is sufficient proof, if uncontradicted, to sustain it. (*Jain v. Priest,* 30 Ida. 273, 164 Pac. 364.)

The judgment is affirmed. Costs are awarded to respondents.

Rice, J., concurs.

BUDGE, J., Concurring Specially.—I agree with the conclusions reached in the majority opinion, that the trial court did not err in entering its judgment quashing the writ of *habeas corpus,* and thereby declining to interfere with the custody of the minor child, Mary Bush.

In determining the custody of a child, its welfare is of paramount importance, yet the right of a guardian to the custody of his ward is entitled to consideration.

C. L., sec. 5775, provides that:

"5775. Custody of minor by guardian. If the minor has no father or mother living, competent to have the custody and care of his education, the guardian appointed shall have the same."

And C. L., sec. 5776, provides that:

"5776. Every guardian appointed shall have the custody and care of the education of the minor, and the care and management of his estate, until such minor arrives at the age of majority or marries, or until the guardian is legally discharged."

This right of the guardian to the custody of the ward is like the right of the natural parent to the custody of the child. A guardian, lawfully appointed, stands *in loco parentis* with respect to his ward, and is entitled to the custody of the ward until such ward arrives at the age of majority or marries, or until the guardian is legally discharged, unless the acts or conduct of the guardian have been such as to constitute abandonment, surrender, transfer or forfeiture of this right, either temporarily or permanently.

The record in this case discloses, among other facts, that in October, 1914, prior to her parents' death, Mary was taken by Mr. Walker to the home of Mr. and Mrs. Fowler, to reside there until a suitable, permanent home could be found for her. She remained there until May, 1915, when she was taken by Mrs. Walker and Mr. Fowler to the home of Mr. and Mrs. Edwards, whereupon it was agreed between Mr. Walker and Mr. and Mrs. Edwards that she was to reside with the latter family, as a member of their household, so long as they wished to keep her and would provide a suitable and proper home for her. The evidence shows that it was never intended that Mary should be taken into the Walker home, but that Mary's mother placed the child in Mr. Walker's care for the purpose of finding a home for her.

It is conceded that Mary's entire care and well-being was left to the Edwards after she was taken to their home; that Mrs. Edwards has been a good mother to her; that she has received proper care, education and moral training, and that a feeling of parental love and affection has grown up between them and Mary.

To my mind the state of facts disclosed in the record justifies the conclusion that Mr. Walker has surrendered and transferred his right, as guardian, to the custody of Mary, to Mr. and Mrs. Edwards, so long as the latter maintain the same parental love and affection towards Mary and continue to furnish her with a good home, educational advantages and moral training, according to the agreement under which they assumed her care. The right of guardianship is not vacated by this proceeding, however, for conditions may hereafter

arise which would warrant the guardian in again asserting his right to the custody of the child.

In any event, I think it can be properly said that this is a case where the right of the guardian to the custody of the minor is not clear, and the best interest of the child should govern the court, the welfare of the child being the main object to be attained. (*Pool v. Gott,* 14 Monthly Law Reporter, 269; *Hoxsie v. Potter,* 16 R. I. 374, 17 Atl. 129; Hurd on Habeas Corpus, p. 539.) To interfere with the relationship which now exists between Mary and the Edwards would be seriously detrimental to her welfare and happiness, and for that reason I think the agreement between Mr. Walker and the Edwards at the time Mary was placed in the custody of the latter should be upheld, and, therefore, that the court did not err in quashing the writ.