Points Decided.

(December 31, 1923.)

## LAURA VAUGHAN, Respondent, v. EDGAR EUGENE HUBBARD and EVA HUBBARD, Husband and Wife, Appellants.

### [221 Pac. 1107.]

ADOPTION—PROCEEDINGS—PROBATE COURT—JURISDICTION—STATUTES—CONSTRUCTION — ORDER OF ADOPTION—CONSENT OF PARENT—PERSONAL APPEARANCE — NONRESIDENT OF COUNTY — PARENTS UNKNOWN.

1. The consent of the parents is essential to a valid adoption in all cases except as provided in C. S., sec. 4685.

2. Where a parent is within or a resident of the county where the persons seeking to adopt a child reside, the personal appearance of such parent before the probate judge is necessary to give the probate judge the power to make a valid order of adoption.

3. To sustain an order of adoption, where a parent, not disqualified by C. S., sec. 4685, from consenting to an adoption, does not appear personally before the probate judge and signify his consent to the adoption, it must affirmatively appear, from the record of the adoption proceeding, that such parent was not a resident of and not within the county where the adopting persons reside.

4. Where a parent was within the county where the adopting persons resided, and executed his consent to the adoption before a notary, but was not within the county when the order of adoption was thereafter made, the words of C. S., sec. 4687, "if within or residents of the county," relate to the time when the consent was given rather than to the time when the order was made.

5. An order of adoption is void where the record of the adoption proceeding fails to show on its face that the parent either appeared personally before the probate judge and consented to the adoption, or that the parent was a nonresident of the county

---

Publisher's Note.

1. Validity of adoption of child without consent of parents, see notes in Ann. Cas. 1914A, 221; 30 L. R. A., N. S., 146.

5. Necessity of notice to parents before adoption of child, see note in 24 A. L. R. 416.

and that his consent to the adoption was filed in the probate court.

6. The law does not authorize the adoption of a child on the sole ground that its parents are unknown.

7. Where the lack of statutory power to make an order of adoption appears on the face of the record of the adoption proceeding, the order may be attacked either directly or collaterally.

APPEAL from the District Court of the Fourth Judicial District, for Lincoln County. Hon. H. F. Ensign, Judge.

Proceedings to set aside order of adoption made by probate court of Lincoln county. Order and decree for plaintiff. *Affirmed.*

Frank T. Disney, Harlan D. Heist, Ivan L. Hiler, J. B. Eldridge and Wm. M. Morgan, for Appellants.

The *habeas corpus* proceeding and the case of *Vaughan v. Hubbard* are collateral attacks upon an order of adoption made and entered in the probate court of Lincoln county in a proceeding wherein said court had original exclusive jurisdiction. Such order is not subject to collateral attack. (Const., art. 5, sec. 21; *In re Allen,* 31 Ida. 295, 170 Pac. 921; *Clarke v. Rossier,* 10 Ida. 348, 78 Pac. 358; *O'Neill v. Potvin,* 13 Ida. 721, 93 Pac. 20; *Christianson v. King County,* 239 U. S. 356, 39 Sup. Ct. 114, 60 L. ed. 327.)

If, at the time of the adoption, the parent or guardian of the child is a nonresident of the county where the application is made, he may execute his consent in writing and acknowledge the same before any officer authorized by law to take acknowledgments, which consent, being filed in the court where the application is made, is deemed a sufficient appearance; and it is immaterial that such parent or guardian resided in and was present in the county where the adoption takes place at a time prior to the hearing on the application. (C. S., sec. 4687.)

The evidence is insufficient to support the findings of fact and decree. (*Spencer v. John,* 33 Ida. 717, 197 Pac. 827;

*Harker v. Seawell,* 35 Ida. 457, 206 Pac. 812; *Nelson v. Intermountain Farmers' Equity,* 36 Ida. 518, 211 Pac. 550.)

If we proceed upon the theory that the right to the custody and control of the infant in question may be tried and determined in a *habeas corpus* proceeding, the court should have been guided by the welfare and best interests of the child and should have found respondent to be morally unfit to have the custody and control of it. (*Andrino v. Yates,* 12 Ida. 618, 87 Pac. 787.)

By virtue of the plaintiff's consenting under oath to the adoption of the child, she herself waived all further notice of proceedings and all her other rights in this cause, as her consent under oath was notice to the court of her sincere wishes and sworn desires. (*Flannigan v. Howard,* 200 Ill. 396, 93 Am. St. 201, 65 N. E. 782, 59 L. R. A. 644.)

A person after having consented to the adopting of a child is estopped from denying same. (*In re Williams,* 102 Cal. 70, 41 Am. St. 163, 36 Pac. 407.)

A substantial compliance with the statute is all that is required. (1 C. J. 1390.)

James & Ryan and C. O. Stockslager, for Respondent.

If the parent is within or a resident of the county, he or she must appear before the probate judge of the county, where the person adopting resides and the necessary consent must there be signed. (C. S., sec. 4687; *In re Sharon's Estate,* 179 Cal. 447, 177 Pac. 283; *In re Estate of Johnson,* 98 Cal. 531, 33 Pac. 460, 461, 21 L. R. A. 380.)

The right of adoption was unknown at common law, is repugnant to its principles, and the statutory requirements for adoption must be strictly complied with. (*Furgeson v. Jones,* 17 Or. 204, 11 Am. St. 808, 20 Pac. 842, 3 L. R. A. 620; *In re Sharon's Estate, supra; Ex parte Clark,* 87 Cal. 638, 25 Pac. 967; *In re Stevens,* 83 Cal. 322, 17 Am. St. 252, 23 Pac. 379; *In re McGrew,* 183 Cal. 177, 190 Pac. 804; *Prince v. Prince,* 188 Ala. 559, 66 So. 27; *Cook v. Echols,* 16 Ala. App. 606, 80 So. 680; *In re Eva Martin,* 29 Ida. 716, 161 Pac. 573; *Tyler v. Reynolds,* 53 Iowa, 146,

4 N. W. 902; *Shearer v. Weaver*, 56 Iowa, 578, 9 N. W. 907; *Long v. Hewitt*, 44 Iowa, 622; *Keegan v. Geraghty*, 101 Ill. 26; *Boland v. Taggart*, 190 Cal. 493, 27 A. L. R. 1360, 213 Pac. 504.)

The statutory requirements in adoption proceedings are jurisdictional and unless they are complied with, the adoption is insufficient, the attempted contract is invalid and the order of adoption is void. (*Ex parte Chambers*, 80 Cal. 216, 22 Pac. 138; *Matter of Cozza*, 163 Cal. 514, 126 Pac. 161; *Estate of McCombs*, 174 Cal. 211, 162 Pac. 897; *Jain v. Priest*, 30 Ida. 273, 164 Pac. 364.)

The right of a parent to the custody of his child is not affected or prejudiced by an invalid order of adoption. (*Jain v. Priest, supra.*)

The custody of a child can be legally given to a person other than the parent on the ground that it will be better cared for by such other person only where the legal right of the parent to the custody of such child is not clear. (*Jain v. Priest, supra; In re Crocheron*, 16 Ida. 441, 101 Pac. 741, 33 L. R. A., N. S., 968; *Andrino v. Yates*, 12 Ida. 618, 87 Pac. 787.)

In a contest between one who has no legal right to the custody of a child and the parents, the competency of the parents to care for the child cannot be questioned. (*Lovell v. House of Good Shepherd*, 9 Wash. 419, 43 Am. St. 839, 37 Pac. 660; *Jamison v. Gilbert*, 38 Okl. 751, 135 Pac. 342, 47 L. R. A., N. S., 1113; *Ex parte Clark, supra.*)

WM. E. LEE, J.—This proceeding involves two appeals, one from a decree of the district court setting aside, annulling and holding for naught an order of adoption made by the probate court of Lincoln county, whereby the infant son of respondent was adopted by appellants, said decree ordering and adjudging that respondent is entitled to the immediate and sole custody, possession and control of said child, and requiring appellants to immediately deliver and restore him to her, and the other from an order in a *habeas corpus* proceeding relating to the same subject.

Respondent, who had lived in Malad, went to Shoshone on October 17, 1921, where she resided continuously until March 11, 1922, when she became the mother of a child named Douglas Eugene. On March 26, 1922, respondent and her child left the hospital at Shoshone and went to the home of appellants, where they remained until April 17, 1922, when respondent returned to her mother's home in Malad, leaving the child with appellants. Respondent considered the advisability of consenting to the adoption of her child by appellants, although it seems that respondent never at any time desired to permanently give up the child. Appellants wanted to adopt the child, and respondent, on April 10, 1922, executed her consent to the adoption. The consent to adoption afterward filed with the probate judge was contained on a blank form used in the probate court of Lincoln county for that purpose. Respondent acknowledged the execution of the instrument in Lincoln county before Senator Disney, a lawyer and notary public of Shoshone, and left it with him with the understanding that it would not be delivered to appellants except at her request. Senator Disney advised respondent not to consent to the adoption of her child, and while he appears as counsel for appellants in this case, there is nothing in the entire record that impugns his good faith or intimates that he was not honestly and fairly advising respondent of her rights.

Some time after the execution of the purported consent to the adoption of her child by appellants, to wit, in the latter part of June, 1922, respondent's mother, learning of the child, came to Shoshone and met appellants and respondent. Appellants had by that time become attached to the child, and desired either to adopt it at once or have respondent take it away. The mother of respondent, upon being made acquainted with the situation, urged her daughter to consent to the adoption of the child, and to direct Senator Disney to deliver to appellants the formal consent she had left with him a little over two months before. While it appears from all the evidence that it was with much regret that respondent followed the advice of her

mother and finally told Senator Disney to deliver her executed consent to the adoption of the child, at the same time it clearly appears that she did so. On August 30, 1922, the petition for adoption and respondent's consent thereto were presented to the probate court of Lincoln county, and an order of adoption was made. Thereafter, respondent's mother experienced a change of heart, and came to the conclusion that she desired that her grandson be returned to its mother; and respondent, on March 17, 1923, commenced the above-mentioned proceedings for the purpose of having the order of adoption set aside and the possession and custody of the child restored to her. By stipulation between the parties, the cases were consolidated for trial in the district court. The district court found in favor of respondent and against appellants.

Appellants insist that the child was duly and regularly adopted in compliance with article 2, chapter 185, title 36, of the Compiled Statutes of this state. Under the provisions of C. S., sec. 4685, the consent of respondent was necessary to the adoption of her child. C. S., sec. 4687, provides that—

"The person adopting a child, and the child adopted, and the other persons, if within or residents of the county, whose consent is necessary, must appear before the probate judge of the county where the person adopting resides, and the necessary consent must thereupon be signed, and an agreement be executed by the person adopting, to the effect that the child shall be adopted and treated in all respects as his own lawful child should be treated. But if the parent or guardian of the child, or either of them, is a nonresident of the county where the application is made, such nonresident parent or guardian may execute his consent in writing, and acknowledge the same before any officer authorized by the laws of this state to take acknowledgments of deeds, which consent being filed in the court where the application is made, is deemed a sufficient appearance on the part of such nonresident."

It is earnestly argued by appellants that respondent was not a resident of or within Lincoln county at the time of the adoption; while it is contended on the other side that respondent was within Lincoln county at the time she signed the purported consent and when she later orally agreed that the purported consent be used, and that, instead of so signing the purported consent and acknowledging the execution of the same before a notary, the law requires that she should have appeared personally before the probate judge and there given her consent to the adoption.

The adoption record shows that at the time of signing and acknowledging the "consent to adoption," on April 10, 1922, respondent was within Lincoln county. She had been living in Lincoln county continuously since October 17, 1921. It is conceded that respondent was within Lincoln county on July 1, 1922, when she instructed Senator Disney to deliver the consent to adoption which she had theretofore signed. The order of adoption was signed by the probate judge on August 30, 1922. Neither the order of adoption nor any other record of the adoption proceeding affirmatively shows that respondent was personally present. It is conceded that on that day, respondent did not appear before the probate judge, and the evidence shows that she was not within Lincoln county.

The right to adopt a child, as given by our statute, was unknown to the common law, although it was recognized by the civil law. It has been held that the statute must, therefore, receive a strict construction. (*Furgeson v. Jones,* 17 Or. 204, 11 Am. St. 808, 20 Pac. 842, 3 L. R. A. 620.) Our statute was taken from California, and it has been held in that state that—

"He who claims that an act of adoption has been accomplished must show that every essential requirement of the statute has been strictly complied with." (*In re Sharon's Estate,* 179 Cal. 447, 177 Pac. 283.)

"The right to adopt a child and the right of a person to be adopted as the child of another are wholly statutory, and he who claims that an act of adoption has been accom-

plished must show that every essential requirement has been complied with.'' (*In re Taggart's Estate,* 190 Cal. 493, 27 A. L. R. 1360, 213 Pac. 504.)

''The proceeding for adoption is a special one, and the requirements of the statute must be strictly construed, particularly with respect to the jurisdiction of the court.'' (*In re McGrew,* 183 Cal. 177, 190 Pac. 804.)

C. S., sec. 4682, is as follows:

''Any minor child may be adopted by any adult person, in the cases and subject to the rules prescribed in this chapter.''

It was said by this court in *In re Martin,* 29 Ida. 716, 161 Pac. 573, a case in which a child was adopted without the knowledge or consent of a parent, that—

''Parents should not be permanently deprived of the custody of their children and the right to act as their legal guardians, even when, under certain circumstances, the custody of the children must be temporarily surrendered, *except in strict accordance with the statutes and under circumstances which fully warrant such drastic action.''* (Italics ours.)

Under the rule announced in *In re Martin, supra,* there can be no question that where one relies upon an order of a probate judge as his authority for permanently depriving the natural parent of the custody of a child, it must appear from the adoption proceedings that all the essential statutory provisions have been complied with. A consideration of the entire article relating to adoption, and more especially C. S., secs. 4685 and 4687, justifies the conclusion that it is the theory of the law that the consent of a parent is absolutely essential to a valid adoption in all cases except as set forth in C. S., sec. 4685. (*In re Crocheron,* 16 Ida. 441, 101 Pac. 741, 33 L. R. A., N. S., 868; *Jain v. Priest,* 30 Ida. 273, 164 Pac. 364; *In re Chambers,* 80 Cal. 216, 22 Pac. 138; *In re Cozza,* 163 Cal. 514, Ann. Cas. 1914A, 214, 126 Pac. 161.)

In place of the service of process required in actions at law and suits in equity to clothe a court with jurisdiction to

enter its judgments, decrees and orders, the legislature, in the exercise of its power, has provided that in adoption proceedings, the consent of the parent to the adoption is essential to give the probate judge power to enter a valid order of adoption. In the exercise of its wisdom, and doubtless to prevent, as far as possible, depriving a parent of his natural right to the custody of his child against his will, the legislature has specifically required that where the parent is either within or a resident of the county within which the person adopting resides, the parent must personally appear before the probate judge, and thereupon sign the consent to the adoption.

This court held in *Jain v. Priest, supra*, that in order to make a valid order of adoption without the consent of the parents, it must appear in the record that the case comes within some of the exceptions mentioned in the statute. "This," the court said, "we think, is a jurisdictional requirement, and must be complied with in order to make the order valid." Upon the authority of the reasoning in *Jain v. Priest, supra*, and because of the mandatory nature of the first sentence of C. S., sec. 4687, as compared with the permissive and directory nature of the second sentence, we are of the opinion that, in order to sustain an order of adoption where a parent, not disqualified by C. S., sec. 4685, does not appear personally before the probate judge and signify his consent to the adoption, it must affirmatively appear from the record of the adoption proceeding that such parent was not a resident of, and was not within, the county.

In the case of *In re Johnson's Estate*, 98 Cal. 531, 33 Pac. 460, 21 L. R. A. 380, the supreme court of California construed a statute identical with the first sentence of C. S., sec. 4687, and C. S., sec. 4688. After holding that the adoption of a child was not a judicial proceeding, the court said:

"The proceeding is essentially one of contract between the parties whose consent is required. It is a contract of a very solemn nature, and for this reason the law has

wisely thrown around its creation certain safeguards, by requiring, not only that it shall be entered into in the presence of a judge, but also that it shall receive his sanction, which is not to be given until he has satisfied himself of these three things: First, that the person adopting is 10 years older than the child; second, that all the parties whose consent is required do consent, fully and freely, to the making of such contract; third, that the adoption contemplated by the contract will be for the best interest of the child adopted.

"It is apparent that the only object of section 227 of the Civil Code in directing the judge to examine the parties who are required to appear before him is that he may satisfy himself in relation to the facts just mentioned, and the subject of the examination is to be confined to these three matters; . . . .

"It can make no difference whether the papers already properly signed were presented to the judge by the parties, or whether such papers were signed by them at the time. The substantial thing required by the statute is that the parties whose consent is required do consent in the presence of the judge, and that such consent is manifested by writings then delivered by them for that purpose."

A consideration of the adoption statutes leads irresistibly to the conclusion that the legislature intended that the persons adopting the child, the child and the parents, if within or residents of the county, appear before the probate judge, and then and there begin and complete the adoption; and that it did not contemplate the procedure followed in this case. To determine the matter at issue, however, it is necessary to decide whether the words of C. S., sec. 4687, "if within or residents of the county," relate to the time of giving consent to the adoption, or the time of filing the application or making the order. We are of the opinion that they must be held to relate to the time when the consent is given, rather than to the time of making the application or the order.

Such a construction is in harmony with the spirit of the law. It makes necessary the personal appearance of a nonresident parent who is within the county, and enables the probate judge, by a separate examination of the parent, to determine not only if the parent in reality consents to the adoption of the child, but also whether the proposed adoption will promote the best interests of the child, which, in the final analysis, is the purpose for which the adoption law was enacted.

The consent to adoption sets forth that "Laura Vaughan, mother of the child Douglas Eugene Vaughan, named in the petition . . . . for the adoption by said petitioners, . . . . gives her consent to said adoption . . . . and joins in the petition . . . . " It should be remembered that respondent signed this instrument on April 10, 1922, and that the petition referred to, and in which she joined, was not then in existence, and was not in existence until August 30, 1922, more than four months later. It is conceded that respondent did not consent to the adoption of the child when the formal consent was signed, for she specifically instructed that it be not made use of until directed by her. The evidence shows that when she later on orally directed that the formal consent be used to effect the adoption, such step was taken because of the desire of her mother, and that it was not wholly free and voluntary. And while it cannot be said that respondent was acting under coercion or duress, her consent was not the character of consent that the law contemplates in a case of such far-reaching importance. Had respondent appeared personally before the probate judge at the time she signed the formal consent or at the time she decided to permit it to be used, the probate judge would possibly have concluded that she did not in fact consent to the adoption.

Four papers constitute the record in this adoption proceeding, to wit: Petition for adoption, consent to adoption, agreement of adoption and order of adoption. The petition recites "that the mother of said minor is Laura

Vaughan, whose present residence is unknown. The father of said minor is unknown.'' The order of adoption recites that appellants, the child and all others within or residents of the county, whose consent was necessary under the law, appeared, and that respondent filed her consent in writing. It nowhere appears in the order that respondent either personally appeared before the probate judge and there consented to the adoption, or that she was a nonresident of the county so as to justify an order under the second sentence of C. S., sec. 4687, but the order does recite that ''Laura Vaughan, mother and the father is unknown.'' The law does not authorize the adoption of a child on the mere ground that its parents are unknown. While the recital in the order, that all persons within the county, whose consent was necessary, appeared, might be sufficient, if standing alone, to successfully withstand a collateral attack, the order also states that respondent was unknown. In view of these contradictory recitals, and the fact that the consent to adoption shows on its face that respondent ''personally appeared'' before the notary in Shoshone, Lincoln county, and acknowledged the consent, we cannot say that the record shows either that respondent personally appeared before the probate judge and consented to the adoption of the child, or that she was a nonresident of Lincoln county. The power to make an order of adoption is wholly statutory, and it is necessary that the record show the existence of everything required by the statute to authorize the probate judge to make the order.

It follows that the probate judge did not have power to make the order of adoption, that the order of adoption is void, and that it gave to appellants no legal right to the custody of the child as against a natural parent. The lack of statutory power to make the order of adoption appearing on the face of the record, the order may be attacked either directly or collaterally. (*Jain v. Priest,* 30 Ida. 273, 164 Pac. 364.)

It is unnecessary to determine the relative competency of the respective parties to care for the child. (*Jain v. Priest, supra; Lovell v. House of the Good Shepherd,* 9 Wash. 419, 43 Am. St. 839, 37 Pac. 660; *Jamison v. Gilbert,* 38 Okl. 751, 135 Pac. 342, 47 L. R. A., N. S., 1133; *Ex parte Clark,* 87 Cal. 638, 25 Pac. 967.) However, in view of the fact that the child is a mere infant; that Mr. Hubbard is fifty-five years of age and that Mrs. Hubbard is fifty-six years of age; that respondent is a young woman; and that her parents, who appear to be willing to assist in caring for the child, are in fair financial circumstances, we would not be justified in leaving the child in appellants' custody merely because they might be able to give the child better opportunities than it may otherwise receive from its mother and other blood relatives.

The father of the child is not a party to these proceedings. However, it nowhere appears that he in any manner consented to the adoption. It is nowhere set forth that the father is dead or comes within any of the exceptions mentioned in C. S., sec. 4685 or 4691. The only reason appearing for a failure to secure the consent of the father, and his appearance before the probate judge for that purpose, is that he "is unknown," which, as hereinbefore stated, is not sufficient.

It is not necessary to pass upon the other questions raised by appellants.

The order and decree of the district court are affirmed. Costs to respondent.

Budge, C. J., and McCarthy, Dunn and William A. Lee, JJ., concur.