### HALL v. WHIPPLE.

(Court of Civil Appeals of Texas. Galveston. Feb. 12, 1912.)

1. HABEAS CORPUS (§ 113*)—"FINAL JUDGMENT."

A decree in habeas corpus, refusing petitioner the custody of his minor child, and ordering that it be kept within the jurisdiction of the court, subject to further orders, the cause being continued on the docket, is a final decree, from which the petitioner may appeal.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 102–115; Dec. Dig. § 113.*

For other definitions, see Words and Phrases, vol. 3, pp. 2774–2798; vol. 8, p. 7663.]

2. DIVORCE (§ 303*) — CUSTODY — MODIFICATION OF DECREE.

Courts of equity have jurisdiction over the question of the custody of minors, and their decrees are always subject to modification or change upon proper showing; the courts retaining jurisdiction over the child, whether the decrees expressly provide or not.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 793–795; Dec. Dig. § 303.*]

3. HABEAS CORPUS (§ 113*) — RIGHT TO APPEAL—ACQUIESCENCE IN DECREE.

Where the decree in habeas corpus proceedings, by which a father sought to obtain the custody of his minor child, refused him that custody, but allowed him the privilege of keeping the child on Sundays, the father did not acquiesce in the decree by keeping the child on Sundays, in accordance with its provisions, and so was entitled to appeal.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 102–115; Dec. Dig. § 113.*]

4. HABEAS CORPUS (§ 99*) — CUSTODY — RIGHTS OF FATHER.

The welfare and best interests of the child are the paramount questions in proceedings involving its custody; but it is presumed that

the best interests of minor children will be subserved by placing them in the custody of their father, and his rights to their custody are paramount, in the absence of evidence showing his disqualification.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 84; Dec. Dig. § 99;* Parent and Child, Cent. Dig. §§ 4–32.]

5. EVIDENCE (§ 594*)—POWERS OF COURT—CONSIDERATION OF EXTRINSIC MATTERS.

The trial court cannot disregard uncontroverted evidence, in proceedings involving the custody of minor children, because of his peculiar knowledge of the parties, or his observations from the testimony of the witnesses.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. § 594.*]

Appeal from District Court, Jefferson County; W. H. Pope, Judge.

Habeas corpus by Phil V. Hall against Mrs. E. D. Whipple. From a judgment denying petitioner the custody of his minor child, he appeals. Reversed and rendered.

Blain & Howth, for appellant. E. A. McDowell and W. H. Davidson, for appellee.

McMEANS, J. In May, 1910, the district court of Jefferson county granted a decree of divorce in favor of Maud Hall v. Phil V. Hall, and awarded to the mother the care and custody of their infant child, with the right of the father to visit the child at certain times. The mother died in December, 1910, and the child was left in possession of its maternal grandmother, Mrs. E. D. Whipple. The father, desiring to obtain possession of his child, on the 13th day of December, 1910, applied to the Honorable W. H. Pope, judge of the district court, for a writ of habeas corpus, alleging that the child, Juanita Hall, was unlawfully restrained of her liberty by Mrs. Whipple. The application was granted, and the respondent appeared in person and by attorneys. She admitted that the relator was the father of the child; but set up in her answer that in May, 1910, the court had entered the decree of divorce and awarded the custody, care, and maintenance of the child to its mother; that the mother died in December, 1910, and that, just prior to her death, she had expressed great desire that she should raise her said child, and surrendered and transferred the care, custody, and maintenance of the child to her; and that the order of the court, awarding the care and custody of the child to the deceased mother, was in full force and effect. She set out at length her peculiar fitness to raise and care for the child, and that the father was unfit, disqualified, and incapable of undertaking the care and raising of the child, and set out with great particularity the alleged facts upon which she based her contention that he was unfit, disqualified, and incapable.

The court heard the testimony, and on the 15th day of December, 1910, entered judgment for appellee as follows: "On this the 15th day of December, 1910, came on to be heard the above numbered and entitled cause, the respondent, Mrs. E. D. Whipple, having accepted service herein and having produced the child, Juanita or Louise Hall, in this court, and the court, having heard the pleadings read, the testimony adduced, and the argument of counsel, is of the opinion that the welfare and best interests of said child, Juanita or Louise Hall, demand that its possession, care, and custody by respondent, said Mrs. E. D. Whipple, who is the grandmother of said child, be not disturbed at this time. It is therefore ordered, adjudged, and decreed by the court that said child, Juanita or Louise Hall, its possession, care, and custody, be, and the same is hereby, remanded and awarded to the respondent, Mrs. E. D. Whipple, until the further orders of this court. It is further ordered that said child be kept within the jurisdiction of this court, subject to the orders of this court, jurisdiction over said child being retained by this court, and this cause is ordered continued upon the docket thereof. It is further ordered that the relator, P. V. Hall, who is the father of said child, be allowed to have said child with him each Sunday until otherwise ordered; and that for that purpose said child be delivered to him at the domicile of the respondent by nine (9) o'clock a. m., to which place said relator shall redeliver said child on the same day, not later than six-thirty (6:30) o'clock p. m. on such Sundays."

From this judgment, appellant, after his motion for a new trial had been overruled, has appealed, and by appropriate assignments of error has assailed the action of the court in awarding the custody of the child to appellee.

[1] We are met at the threshold by the contention of appellee that the judgment, above copied, is not a final judgment, and that therefore an appeal therefrom does not lie, and that this appeal should be dismissed. She bases this contention upon the language of the judgment, to the effect that, in the opinion of the trial court, the best interest of the child demands that its custody by appellee, its grandmother, be not disturbed "at this time," and that the child be kept within the jurisdiction of the court and subject to its orders, jurisdiction over the child being retained, and the cause ordered continued on the docket of the court.

[2] This contention is well answered by appellant in his reply brief, from which we quote: "The question sought to be determined by the suit in the court below was the right to the present custody and possession of the child, and that fact that the district judge found that the welfare and best interest of the child demanded that its possession, care and custody by the respondent be not disturbed 'at this time' disposed

of the subject-matter of the litigation. A final judgment is one which declares that the plaintiff is or is not entitled to the remedy for which he sues. The right to and custody of a minor is a question over which courts of equity have jurisdiction, and an order of the district judge in relation thereto is always subject to modification or change upon a proper showing, and the court would have retained jurisdiction over the child, whether the judgment so expressly provided or not. Counsel takes the position that appellant should go before the district judge and again ask for the rights which have been denied him, not only upon the hearing, but upon his motion for a new trial. The possibility that the district judge might, at some future time, do that which he should have done ought not to deprive a party of his right to have the action of such judge reviewed. If another motion, and still another, were filed in the trial court, and this process continued ad infinitum, what relief would appellant have, if the cause were continued on the docket, and each order made to read as does the judgment appealed from?" The objection is overruled.

[3] Appellee further contends that appellant should be denied a hearing upon this appeal, because of his acquiescence in the judgment and his acceptance of the terms thereof and of benefits thereunder. This contention is based upon the fact that appellant, although he had appealed from the judgment, had availed himself of the privilege it allowed of having the child in his custody and keeping on Sundays. We overrule this contention. The principle invoked by appellee and the authorities cited to support it do not apply where the benefits and privileges allowed by the judgment are only such as appellant was shown to have availed himself of in this case.

[4] This brings us to the main question, viz., Did the court err in refusing to give to appellant the custody of his child? The evidence in the record, without dispute, shows that appellant is a man of good moral character, sober, steady, and industrious, and that he earns an average salary of at least $35 a week. He rents a house, in which he lives, paying the rent regularly and promptly, and that his sister, who is a splendid housekeeper and a most excellent young woman, keeps house for him, and will assist him in keeping and caring for the child. His earnings are sufficient to enable him to give to his child all the necessaries and comforts the age and condition of the child will require, and there is no testimony in the record to suggest, much less to require, a finding that the father is in any way disqualified for the proper discharge of his parental duties. While the paramount question to be decided in cases like this is the welfare and best interests of the child, the father is by law made its custodian, and it is a presumption of the law that the best interest of the child would be subserved by placing it in the custody of the father; and, in the absence of any evidence to show his unfitness or disqualification for the discharge of his duty as parent, his paramount right to the custody of his child cannot be disregarded. Watts v. Lively, 60 S. W. 676; State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S. W. 901; Parker v. Wiggins, 86 S. W. 788; Sancho v. Martin, 64 S. W. 1015.

In Parker v. Wiggins, it is said: "The law applicable to cases of this character is well settled. The paramount consideration with the courts is the welfare of the child. The father is the natural guardian of his child, and is ordinarily entitled to the possession of its person. It seems to have been uniformly held that in a proceeding by the father to recover the possession of his child it is the duty of the court to award him the custody of such child, unless it is made manifest to the court that the father is unworthy or incompetent to discharge the obligation and trust imposed upon him by the laws of nature."

In the Deaton Case, our Supreme Court, quoting from Weir v. Marley, 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672, says: " 'The discretion to be exercised is not an arbitrary one; but, in the absence of any positive disqualification of the father for the proper discharge of his parental duties, he has, as it seems to us, a paramount right to the custody of his infant child, which no court is at liberty to disregard. And, while we are bound, also, to regard the permanent interests and welfare of the child, it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided, until it is made plainly to appear that the father is no longer worthy of the trust. The breaking of the ties which bind the father and the child can never be justified without the most solid and substantial reasons. Upon the father, the child must mainly depend for support, education, and advancement in life, and as security for this he has the obligation of law, as well as the promptings of that parental affection which rarely fails to bring into the service of the child the best energies and most thoughtful care of the father. In any form of proceeding, the sundering of these ties will always be approached by the courts with great caution, and with a deep sense of responsibility.' "

[5] But appellee contends that the court had a right, from his own peculiar knowledge of the parties, conditions, etc., to decide as to what was for the best interests of the child, regardless of, and aside from, the testimony adduced upon the trial; that, considering the age, sex, and physical condition of the child, and knowing the parties and observing the witnesses as the court did, no error was committed in rendering the decree complained of, and the judgment

should not be disturbed. We cannot give our assent to the contention that the court can disregard all the evidence adduced on the trial of an issue, and determine the cause from his knowledge of the parties and existing conditions, and from its opportunity to observe the witnesses while they are testifying. It may be helpful to the court, in enabling it to determine the weight of the evidence, to take such matters into consideration; but in no case, as we believe, and certainly not where the testimony is uncontroverted, is the court authorized to render judgment against the evidence, based solely upon its knowledge of the persons and conditions of litigants or witnesses or situations. And in this case it is not shown that the court had any such peculiar knowledge of persons and conditions, or that, if it did, the judgment was based thereon.

Under the facts of this case, the father is entitled to the custody of his child, and the judgment of the district court, awarding such custody to appellee, is reversed, and judgment here rendered for appellant.

We think it not improper to say, in this connection, that the evidence in the record leaves us in no doubt of the fitness, financial ability, and willingness of the appellee to take upon herself the care and custody of the child. That she loves it tenderly and will miss it sadly is manifest from the testimony, and that she is entitled to the sympathy of all right-thinking persons no one will deny. The law gives the custody of the child to the father, when it is not shown that he is unfit or incompetent to have it, and to its mandates all must bow. It is to be hoped that the great love which both the father and grandmother bear for the child may prompt them to bury their differences, and with an eye single to the welfare of the child work together in harmony, to the end that the child may have the benefit of that "parental affection which rarely fails to bring into the service of the child the best energies and the most thoughtful care of the father," and at the same time the motherly care, tender ministrations, and softening influences of the grandmother.

Reversed and rendered.