**CECACCI et ux. v. MARTELLI et al.**
(No. 8059.)

(Court of Civil Appeals of Texas. Galveston. Nov. 14, 1921. Rehearing Denied Dec. 8, 1921.)

1. **Parent and child ⬅️2(3)—Custody awarded to persons to whom parents had intrusted child, who were better able to provide for her.**

Where plaintiffs, to whom defendants intrusted the custody of a child in infancy, and who had cared for her for ten years, were far better able to provide and care for the child than defendants, and to take the child from plaintiffs and give her to defendants would be to remove her from a home of comfort to one of less comfort and more hardship, if not of poverty, the court was justified in awarding the custody of the child to plaintiffs, though ordinarily the relative financial status of the parties is not controlling.

2. **Parent and child ⬅️2(3)—Welfare of child controlling on question of custody.**

In a case involving a dispute as to the custody of a child between her parents and persons who have cared for her from infancy, the best interests of the child must determine the question, and the child is entitled to the benefit of the home and environment which will most likely promote its highest welfare.

3. **Parent and child ⬅️2(4)—Custody of child is question of fact, and finding not disturbed unless against preponderance of evidence.**

In a case involving a dispute as to the custody of a child, the question as to the best interests of the child is one of fact which must be determined by the trial court, and unless his finding is so against the preponderance of the evidence as to be clearly wrong, it will not be disturbed by an appellate court.

4. **Parent and child ⬅️2(2)—Relation not controlling in determining custody.**

In deciding a dispute as to the custody of the child, the natural relationship of parent and child must be given the very highest consideration, but is not necessarily determinative of the issue, even where the parents are not shown to be in any sense unworthy of the trust of rearing their child.

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by Catherine P. Martelli and husband against A. Cecacci and wife. From a judgment for plaintiffs, defendants appeal. Affirmed.

Marsene Johnson, Elmo Johnson, Roy Johnson, and Marsene Johnson, Jr., all of Galveston, for appellants.

John H. Bailey, of Cuero, and James B. & Charles J. Stubbs, of Galveston, for appellees.

PLEASANTS, C. J. This proceeding was instituted by appellees to regain from appellants the custody of a minor child of appellants'. The trial in the court below without a jury resulted in a judgment in favor of plaintiffs for the custody of the child, but decreeing that she visit and remain with her parents from Friday afternoon until Saturday afternoon of each week.

The facts disclosed by the record are, with an immaterial exception hereinafter indicated, correctly stated by the learned trial judge in the following conclusions of fact and law, which we adopt as the conclusions of this court:

"The court finds the·facts to be in all respects as alleged by relators; that the child was by her parents confided to them when an infant only 13 months old, and that it was expressly understood and agreed by the parents that they would not seek to reclaim her; that relators insisted on a writing to that effect, but respondents declared that to be unneces-

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sary. At the time she was given relators they had no young children and respondents had five, and now have eight besides Mary, all under 18 years of age. Relators have faithfully cared for Mary as though she were their own child, providing for her every material want and her education and spiritual welfare. They have taught her to love and honor her natural parents and have sent her every week, as far as was practicable, to spend one or two days with them, the nurse they had provided for her carrying her when an infant and the child later going by herself.

"There has never at any time been the slightest dissatisfaction shown or complaint made by the parents with the manner in which she was treated, cared for, and instructed. The detention of the child by her parents when she was last sent in the usual way to visit them was due to some caprice of the mother, probably to relators' name being used on the child's school card, a fact fully explained by the evidence and done without any intention to give her their own name instead of that of her real parents. But whatever the cause it was not prompted by any inconsideration for the welfare of the child. No child could have been more tenderly cared for or better provided for. Relators are far better able to care for the child than are her parents, who have no reliable source of income except the wages of the father, who is an ice wagon delivery man in the employment of Capt. Nicolini, earning $25 a week. The evidence of the earnings of the 17 year old son, which it is claimed were also contributed to the support of the Cecacci family, is unreliable and lacks that confirmation which could have been so readily furnished if true. The family has at times been in need of charitable assistance. If Mary were returned to her parents it would necessarily be to consign her to a distinctly inferior mode of living to that to which she has been accustomed, and so closely have the ties of love and devotion between her and her foster mother been woven in the affectionate intimacy of these ten years that to sever them now would greatly mar the child's future welfare as well as cause her the deepest present distress.

"It is the interest of the child that must be consulted; and while ordinarily her best interest will be presumed to be served by confiding her custody to her natural parents, it is merely a presumption of fact and therefore rebuttable. It is rebutted in this case by an overwhelming mass of evidence without any reflection on the moral fitness of respondents. While no validity is to be attached to the agreement that relators should keep the child permanently, yet where the parents have so agreed and the child has from earliest infancy been cared for by those to whom they have confided it for so long a time, ten years in this case, that she has become so devoted to them that it would be harsh and cruel toward her to again change her custody, such change will not be made by the court. Parents have no rights superior to the welfare of the child, and especially have they no right to complain when, as in the case at bar, such right as they have is overborne in the interest of the child by the natural result of conditions they have themselves created.

"It is a deplorable controversy, but without in any manner reflecting on the character of respondents it is clearly the duty of the court, in the interest of the child, to restore her to relators, who have so tenderly cared for her for the past ten years. If, as seems probable from the testimony, Mary is growing up under influences and conditions that fit her for a higher social station than her brothers and sisters, this certainly constitutes no valid reason for returning her to the same environment, even if her parents are able to feed and clothe her, a more favorable view of the case for the claim of respondents than the evidence justifies.

"As said by the Court of Civil Appeals in Burchard v. Woodward, 223 S. W. 707 (1920), in affirming the judgment of the trial court confiding the custody of an infant child to the grandparents instead of the father:

" 'Such testimony, we think, justified the trial court in rendering judgment for respondents. Such judgment did not preclude the applicant from visiting the child at proper times, and we think that he should be allowed to do so, and that, if necessary, the trial court should make an order to that effect. But the paramount consideration controlling the trial court is the best interests of the child. It is true that, where no reasons are shown why a surviving parent should not have the custody, management, and control of his minor child, such parent is entitled to such control. Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Carter v. Lambert, 214 S. W. 566; Hall v. Whipple, 145 S. W. 308; Ex parte Sams, 161 S. W. 388.

" 'The discretion vested in the trial court is not an arbitrary one; but, in the absence of any positive disqualification of the father for the proper discharge of his parental duties, it has been held that the father has a paramount right to the custody of his child, which no court has the right to disregard. Wood v. Deaton, 93 Tex. 243, 54 S. W. 901.

" 'But we think that the evidence in this case tended strongly to show that the best interests of the child would be subserved by allowing it to remain with the grandparents, who have tenderly cared for it since it was a small infant. It was a delicate question for the trial court to decide, yet we conclude that we cannot disturb the disposition made of the case by such court. We would urge that the father cultivate kindly relations with the grandparents and assist in supporting the child during its infancy, and, if such course is followed, we feel sure that the grandparents will teach the little girl to love her father, and that in the future differences here existing will be adjusted to the best interest of all concerned.' "

The evidence shows that appellants' son was earning from $24 to $25 per week and his earnings were turned over to his mother for the support of the family, and we think the trial court's finding that this evidence was unreliable is not justified by the record. However, as before stated, we do not regard the finding as material. Conceding that appellants' resources for the support of their family were all that they claim, the ability of appellees to provide and care for the child are shown, as found by the trial court, to be far better.

[1] While the question of which of the claimants to the care and custody of a child has the larger income and can afford to ex-

pend more in the maintenance and education of the child should never be controlling in cases of this kind, other things being equal, it could not be held that the happiness and welfare of the child, especially a girl, would not be disregarded by removing her from a home of comfort to one, if not of poverty and hardship, at least of less of the comforts and more of the hardships of life. It was only to this extent that the relative financial status of appellants and appellees was given consideration by the trial court.

[2] It is too well settled to require citation of authority that in cases of this kind the best interest of the child must determine the question as to its custody, and that as a matter of law it is entitled to the benefit of that home and environment which will most likely promote its highest welfare.

[3] This is a question of fact which must be determined by the trial court, and unless the finding of that court is so against the preponderance of the evidence as to be clearly wrong it will not be disturbed by an appellate court.

[4] In deciding this question the natural relationship of parent and child must be given the very highest consideration, but does not necessarily determine the issue, even in cases like this where the parents are not shown to be in any sense unworthy the trust of rearing their child.

We do not interpret the opinion of our Supreme Court in the case of State v. Deaton, 93 Tex. 243, 54 S. W. 901, as announcing a rule contrary to the conclusions above expressed.

We are of opinion that the judgment of the trial court should be affirmed; and it has been so ordered.

Affirmed.