**DAVIS et al. v. ELKINS et al.  (No. 6905.)**

(Court of Civil Appeals of Texas. San Antonio. March 7, 1923. Rehearing Denied April 11, 1923.)

**1. Parent and child ⚫➡2(3)—Custody of child to be determined with relation to its welfare.**

The welfare of the child is the controlling factor in determining whether its custody shall be intrusted to one of its divorced parents or to others, as its grandparents. Vernon's Sayles' Ann. Civ. St. 1914, art. 4641.

**2. Parent and child ⚫➡2(4) — Judge's statement sufficient evidence of order for child's custody by grandparents.**

Statement of the trial judges in proceedings for custody of a child awarded to the mother by the divorce decree, but subsequently in possession of its grandparents, held sufficient evidence of court's order awarding custody to them.

**3. Parent and child ⚫➡2(4)—No abuse of discretion in giving children's custody to grandparents.**

There was no abuse of discretion in giving grandparents custody of children who by the divorce decree were awarded to the mother, who shortly thereafter married one living on an $80 per month total disability pension; the uncontroverted testimony sustaining finding that they will be better cared for by the well-to-do grandparents.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Proceeding by Ada Elkins Davis and another against E. Y. Elkins and others for custody of children. From an adverse judgment, petitioners appeal. Affirmed.

Wilson & Wilson and Forrest Campbell, all of San Antonio, for appellants.

I. H. Burney, of San Antonio, for appellees.

FLY, C. J. This is a contest for the custody of two boys, Roy Elkins, aged seven years, and Lawrence Elkins, aged four years, between Ada Elkins Davis, the mother on the one side, and W. Y. Elkins, the grandfather on the other. The history of the case is that on February 27, 1922, Mrs. Davis applied for a divorce from her then husband E. Y. Elkins, on account of his communicating a terrible disease, and cruel conduct toward her. She was granted a divorce by the Seventy-Third district court of Bexar county on April 14, 1922, and the custody of the children awarded to her. Although it was alleged in the original petition that the conduct of her first husband had "undermined her health, and plaintiff is now sickly and a nervous wreck," in a little more than a month after the decree of divorce she was married to one George Davis as her second venture in the matrimonial line. On May 1, 1922, the court changed the order giving the custody of the children to Ada Elkins and placed them in the custody of their grandfather, W. Y. Elkins, the circumstances having so changed as to cause the trial judge to take action in the matter. We adopt the following from the findings of fact of the trial judge:

"E. Y. Elkins, defendant, is the father of Lawrence Elkins and Roy Elkins, and W. Y. Elkins, intervener, is the father of E. Y. Elkins, defendant, and the grandfather of Lawrence Elkins and Roy Elkins, and M. J. Elkins, the wife of W. Y. Elkins, is the mother of E. Y. Elkins and the grandmother of Lawrence Elkins and Roy Elkins, and W. Y. Elkins, intervener, a merchant residing in Uvalde, Uvalde county, Tex., worth approximately $30,000, is willing, able and well qualified to have the custody, care, education, and support of said children, Lawrence Elkins and Roy Elkins.

"Lawrence Elkins is a boy about four years of age, and Roy Elkins is a boy about seven years of age.

"Ada Elkins Davis was formerly Ada Elkins, and she is the mother of the aforesaid children, and she procured a decree of divorce from the defendant E. Y. Elkins on the 14th day of April, A. D. 1922, and on the 22d day of May, A. D. 1922, she married George Davis, and she is now living with said George Davis in an apartment in the city of San Antonio on Essex street.

"Ada Elkins Davis depends for her support and maintenance upon George Davis, and the said George Davis has an income from the United States government in the sum of $80 per month, paid to him on account of being totally disabled while in the government's service, and said George Davis is unable to work, and suffers from some kind of a disorder in his head, and said George Davis is by trade a cook, and said $80 per month paid to George Davis is the only source of income available to said Ada Elkins Davis and George Davis with which to support and maintain themselves, and, if said children were placed in their care and custody, it would be their only available means of support for themselves and said children.

"W. Y. Elkins, intervener, is better able and best qualified to have the care and custody of said children, and it will be for the best interest of said children, Lawrence and Roy Elkins, for the said W. Y. Elkins to have them in his care and custody."

On September 6, 1922, appellants applied for the custody of the children, who had in April, 1922, been confided to the care of W. Y. Elkins, and the latter intervened in the suit, stating that he had been in possession of the children for three months or more, under order of the court, and tendered them into court. He alleged that the mother of

the boys was married to an exsoldier who had some trouble with his head and subject to "some kind of fits," and was drawing a pension from the government, and set up sufficient facts to justify the evidence upon which the findings were based. He also alleged that it had been reported to him that the mother was using "dope" and did not care for the children. The court found that it was for the best interest of the children that their grandparents should have charge of them, granting permission to the mother to visit them at all reasonable times.

[1] Under the statutes of Texas, the district court in all cases of separation between man and wife has the power to give the custody of the children to either father or mother and "to * * * make any order that the safety and well-being of any such children may require." The court may give the custody and education of the children to either of the parents, taking in consideration the prudence and ability of the parents and the age and sex of the child or children. Vernon's Sayles' Civ. Statutes, § 4641; Boyd v. Boyd (Tex. Civ. App.) 157 S. W. 254.

The claim of the parent to the custody of the child must give way to the interest and welfare of the child. The welfare of the latter is infinitely superior to the desires and wishes of the parents. In a similar case to this Rice v. Rice, 21 Tex. 58, Chief Justice Hemphill said:

"There is no evidence, or at least not all of the evidence, to show the grounds upon which the custody of the children was first taken from the father, and in the second place from the mother, and given to her father—the grandfather of the children. The court had authority to remove the children from the custody or guardianship of both of the parents. The benefit of the child, which is the highest consideration, may require this removal. The interests of children, and of the public, in their morals and education, are superior to the claims of parents; and the latter must yield when they come in conflict. We must presume that there was no error, and the court adjudged rightly in awarding to the grandfather the care, management, and education of the children."

Again, in the case of Legate v. Legate, 87 Tex. 248, 28 S. W. 281, the Supreme Court held:

"The one most vitally interested, however, in its custody during the formative period of its character is the one whose present and future happiness and tendencies towards good or evil will be most affected by its early environments, and its physical, mental, and moral training—the child itself. The right of the parent or the state to surround the child with proper influences is of a governmental nature; while the right of the child to be surrounded by such influences as will best promote its physical, mental, and moral development is an inherent right, of which, when once acquired, it cannot be lawfully deprived."

In a late case in the Court of Civil Appeals at Galveston it was held:

"It is too well settled to require citation of authority that in cases of this kind the best interest of the child must determine the question as to its custody, and that as a matter of law it is entitled to the benefit of that home and environment which will most likely promote its highest welfare." Cecacci v. Martelli (Tex. Civ. App.) 235 S. W. 951.

In that case the girl was given into the custody of parties who had cared for her, but not shown to be related to her. The facts showed that her father was receiving $25 a week as a day-laborer, and that the other parties were far better able to care for the child than her parents. The child was awarded to the parties who had been caring for her. Can it be doubted that the loving grandparents, with independent resources, were not in a far better condition to support and educate the two boys than a disabled stepfather whose only resources were $80 a month, as a pension given on account of his injuries?

[2] It is contended that there was no testimony tending to show that the mother's condition has changed since she was awarded the children. That award was made when no one else was seeking the custody of the children, and when presumably the question of the mother's ability to care for the children was not raised or considered. The custody of the children may have been given by a verbal order, but it was effective, and no objection was raised by the mother, and no application for their custody made for four months, and the incentive then seems to have been not love for the children, but a desire to increase the pension her new husband was getting from the government. The evidence indicates that the children will be much better off in every way with their grandparents than in the custody of the mother and her disabled husband. His actual income was $80, but he had placed before the government a claim for $70, of which $20 was for his being married and $50 for the wife and children. The increase has not been granted. Even if the parties were actually getting $150 per month, the court could well have said that the interest of the children would be better subserved by leaving them with their grandparents.

The evidence showed that the grandfather was engaged in merchandising in the town of Uvalde, and that the health of himself and wife was good; that he had been clothing and feeding the boys; that the boys had nothing when he got them except the clothing they had on. The mother never went to see the children during four months although she had a brother living in Uvalde who said she could come and stay with him as long as she desired.

The evidence shows that W. Y. Elkins had possession of the boys from May 1, 1922, until September, and the trial judge states that he had authorized such possession, and that is

sufficient evidence of an order of court. If the mother was deprived by force of the custody of the children, it was the force of the law. It was sanctioned by the trial judge. The first, second, third, and fourth assignments of error are overruled.

The finding of the court to the effect that George Davis has an income from the United States government in the sum of $80 per month is absolutely correct. The speculations of Davis as to what he might in the future get from the government could well be ignored, especially the $50 he expected to get for the children of his wife. He swore: "I get $80 right now, and I put in a claim for the rest." This man is getting a pension of $80 a month on the ground of total disability, or, as he puts it, "My disability is 100 per cent.," and yet he desires to assume the responsibility of feeding, clothing, and educating two boys. If he is able to work, as he swears he is, the government might not be called upon to support him, and, if he is unable to work, he should not endeavor to increase his pension by assuming the support of two boys, and making the government pay for it. The fifth assignment of error is overruled.

[3] The uncontroverted testimony sustains the finding that the children will be better cared for by the grandfather. The court did not find that the mother did not love the children, nor that she would not care for them as well as a person living on the bounties of the government could, although such is the intimation in the sixth and seventh assignments of error, which are overruled.

There is no indication of an abuse of the discretion vested in the district judge by the law, and the eighth, ninth, tenth, eleventh, and twelfth assignments of error are overruled.

The judgment is affirmed.