### DILWORTH et al. v. GREENLAW.*
### (No. 7750.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 19, 1927. Rehearing Denied Feb. 16, 1927.)

1. **Parent and child** ⊕➾2(3)—**In adjudicating custody of child, interest of child is paramount.**

Interest of child is supreme test in adjudicating its custody.

2. **Parent and child** ⊕➾2(1)—**State has interest in welfare of children, and authority to protect them.**

State has vital interest in guarding morals and promoting welfare of children, and has absolute right, power, and authority to protect children.

3. **Parent and child** ⊕➾2(3)—**Doubt as to moral fitness of mother should be resolved in favor of interest of child in determining its custody between mother and aunt of high moral character.**

Doubt as to moral fitness of mother to care for daughter nine years old should be resolved in favor of interests of daughter in determining custody as between mother and aunt having ample means to care for child, and whose moral character was above reproach.

4. **Parent and child** ⊕➾2(3)—**Court is not justified in interfering with parental custody of child merely because of inadequacy of parents' income or their insolvency.**

Mere inadequacy of income, or even insolvency alone, does not justify court in interfering with parental custody of child, whose intellectual, moral, and religious training is chief matter to be considered.

5. **Parent and child** ⊕➾2(2)—**Father is natural guardian of minor children while parents live together.**

Under common law and statutes, father is natural guardian of minor children while parents live together.

6. **Parent and child** ⊕➾2(2)—**Parents not living together have equal rights as to guardianship of minor children (Vernon's Sayles' Ann. Civ. St. 1914, art. 4069).**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4069, when parents do not live together, their rights to guardianship of minor children are equal.

7. **Parent and child** ⊕➾2(2)—**Custody of child should not be divided between mother and aunt holding ill will towards each other.**

In contest for custody of child between mother and aunt holding ill will towards each other, custody should not be given to both, but one or the other should be given full and absolute control of education and training of child.

8. **Parent and child** ⊕➾2(3)—**Aunt having ample means and high moral character held proper custodian of child rather than mother, whose moral character was attacked.**

Evidence *held* to show that welfare of nine year old girl demanded that she be given into custody of aunt on father's side, who was able to maintain her, and who had a high moral character rather than to custody of mother financially unable to support child, and whose moral character had been attacked.

On Motion for Rehearing.

9. **Parent and child** ⊕➾2(2)—**Child should be given into custody of parent rather than close relative, if consistent with its welfare.**

Where consistent with welfare, child should be given into custody of parent rather than to any one else, even though close relative.

10. **Parent and child** ⊕➾2(2)—**Mother, if competent person to care for nine year-old daughter, should have entire custody, though not living permanently in state, and though divorced.**

If facts justify conclusion that mother was suitable person to have charge of nine year old daughter, custody should have been given entirely to mother, though she was not living permanently in state, and though she was divorced.

11. **Appeal and error** ⊕➾716—**Conclusions as to mother's unfitness to have custody of child gratuitously inserted by court in decree are not controlling on Court of Civil Appeals (Rev. St. 1925, art. 2208).**

Conclusions as to mother being unfit to have custody of nine year old daughter voluntarily inserted by judge in decree are not conclusions of fact contemplated by Rev. St. 1925, art. 2208, and have no controlling influence on Court of Civil Appeals, and placing them in judgment adds no sanctity to them, especially where inconsistent with judgment.

Appeal from District Court, Bexar County; W. W. McCrory, Judge.

Suit by Mrs. Terry Greenlaw against Mrs. R. S. Dilworth and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Clamp & Searcy, of San Antonio, for appellants.

Hertzberg, Kercheville & Thomson, of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee to set aside a certain judgment placing the custody of the minor, Terry Kennon Jones, with Mrs. R. S. Dilworth, and to obtain custody of said child for Mrs. Terry Greenlaw, the mother of the child. The court set aside the former judgment, and then rendered the following decree:

---

"It is ordered, adjudged, and decreed by the court that the custody of the minor child of said Elliott Jones and Mrs. Terry Greenlaw, formerly Mrs. Terry Jones, to wit, Terry Kennon Jones, be, and the same is, awarded to Mrs. R. S. Dilworth of Gonzales county, Tex., where she is now in school, from the present time until June 15, 1927, except Saturdays and Sundays of each week, and except the Christmas holidays from December 18, 1926, to January 2, 1927, inclusive, at which times Mrs. Terry Greenlaw, the mother of said child, shall have the custody and possession of said child, but said Mrs. Terry Greenlaw shall not have the right to take said child outside of the state of Texas, or outside of the jurisdiction of this court, and that the said Elliott Jones and Mrs. Terry Greenlaw shall both also have the right to see said child at any and all reasonable times; that on June 15, 1927, the custody of said minor child shall be given and awarded to the mother, Mrs. Terry Greenlaw for the summer; that is, until September 15, 1927.

"The court finds from the evidence that it is not true, as alleged, that the mother of said child, Mrs. Terry Greenlaw, is not a proper person to have the custody of said child, and that it is not true that it would not be to the best interests of said child to award the custody of said child to said mother, but the court concludes that, because Mrs. Terry Greenlaw and her husband are not now permanently living in Texas, and because of the fact that the parents of said minor child are divorced, and and the fact that said child is already in the school at Gonzales, Tex., that the custody of Mrs. R. S. Dilworth should not be disturbed or changed until the expiration of said school term on June 15, 1927.

"It is further ordered by the court that all costs of court herein incurred be adjudged against the party incurring same, and that each party pay his own costs, and that execution issue in favor of the officers of this court for their respective costs."

The facts in this case show that Mrs. Greenlaw was, in December, 1924, divorced from her husband, Robert Elliott Jones, and their only child, nine years of age, Terry Kennon Jones, was consigned to the custody of the mother. Afterwards it was taken from her custody, and placed in that of Mrs. R. S. Dilworth, of Gonzales, Tex. The divorced wife married H. K. Greenlaw, a lieutenant in the United States army, and seeks to regain the custody of the child, a girl, now nine years of age. Mrs. Dilworth is a sister of the father of the child, and he is willing for his sister to be placed in custody of the child. The evidence showed that Mrs. Dilworth is an educated, upright woman, of an excellent family, and that she has ample means to maintain, support, educate, and train the child. The evidence disclosed that Mrs. Greenlaw had no independent means of her own, and there was testimony tending to show that she used profane language, drank intoxicating liquors to excess, and had a violent temper.

This suit originated in the Seventy-Third district court, where the divorce was granted and the custody of the child given to Mrs. Dilworth. That court transferred the cause to the Ninty-Fourth district court, where the judgment herein copied was rendered. Other facts are found in connection with the opinion.

The father in this case, although a man of high character and integrity, is financially unable to fulfill the duty of supporting his child, which is devolved on him whether she be in the custody of himself or the mother. Leaving out, for the time being, the question of the character of the mother and her fitness to have the custody of a girl nine years of age, she is financially unable to care for and educate the child. She has no funds of her own, no income whatever, and, if the child were placed in her custody, the father being financially unable to give her maintenance and support, there would be no one responsible for the maintenance, education, and support of the child who could respond. The present husband would be under no legal obligation to support the child if he could adequately do so from his rather meager salary as a lieutenant in the army. In the very nature of things there are no ties that bind him to the child of a former husband of the mother of the child. Experience and common sense teach this fact. The parents of the child have no property to be divided, and none from which maintenance of the child can be adjudged.

[1] The interest of the child is the supreme test in adjudicating its custody. As said by Chief Justice Hemphill in a case in which children were taken from both parents and placed in the custody of their grandfather:

"The court had authority to remove the children from the custody or guardianship of both of the parents. The benefit of the child, which is the highest consideration, may require this removal. The interests of children, and of the public, in their morals and education, are superior to the claims of parents; and the latter must yield when they come in conflict." Rice v. Rice, 21 Tex. 58.

[2] This principle, this rule, established by all civilized governments, but is at times lost sight of or ignored by courts, and in its place a maudlin sentiment about the love of the mother for the child is allowed to shape judgments as to the custody of children. It is forgotten that the state, the public, has a vital interest in guarding the morals and promoting the welfare of the child, and seeing that it obtains such an education that will fit it for American citizenship. It is forgotten that the destiny of our country depends on the proper rearing and education of its children, and that the state has the absolute right, power, and authority, to protect its young from ignorant or vicious

lives, in so far as it can be done. It is forgotten that the happiness, comfort, and material and moral interests of the child are of much greater importance than the affection of the parents who for any reason are unable to give the child such education, training, and care as will fit it for the benefits and responsibilities of citizenship. The children in the cited case of Rice v. Rice were a girl, five years old, and a boy, three years old, and they were taken from both parents and placed in the custody of a grandfather. The interest of the children was made the supreme consideration. This is in consonance with the decisions in numerous cases in this and other states. As said by Schouler in his Domestic Relations, § 248:

"The cardinal principle relative to such matters is to regard the benefit of the infant; to make the welfare of the children paramount to the claims of either parent. While states differ as to the extent of the father's claims in preference to the mother, in this latter principle they all agree; and judicial precedents, judicial dicta, and legislative enactments all lead to one and the same irresistible conclusion. The primary object of the American decisions is, then, to secure the welfare of the child, and not the special claims of one or the other parent."

That is the rule in Texas, the rule of civilization.

[3] On the one hand, in this case we have a mother divorced from the father of the child, married to a lieutenant, however worthy he may be, but necessarily receiving a small salary, a mother against whom grave charges were made, and some of them not answered even by a naked denial, and on the other we have an aunt of the child, whose moral character is above reproach, whose standing in society has never been assailed, contending for the custody of the nine year old child. The aunt has ample means and a competency sufficient to give a thorough education to the child, with a disposition to train her to be a useful, pure, upright woman. If the evidence of the witnesses as to the language, the mode of living, the character and deportment of the mother, much of it uncontradicted, be true, it must inevitably raise at least a grave doubt as to her fitness to shape the moral character of a young girl nine years of age. That doubt should be resolved in favor of the future happiness, purity, morality, and uprightness of the child.

The judgment in this case not only exonerated the mother of all blame, and decreed that she was fitted to rear the child, but, while giving the custody of the child to Mrs. R. S. Dilworth, gave authority to Mrs. Greenlaw to take the child every Saturday and Sunday, during the Christmas holiday, and during the summer vacation from June 15, 1927, to September 15, 1927.

The statement of facts shows that marked antagonism and unfriendliness exist between Mrs. Greenlaw and the relatives of her former husband, Elliott Jones, and ingenuity could not suggest a more aggravated case of divided authority, and one fuller of greater possibilities of irreparable harm to the nine year old girl than that embodied in the judgment from which the appeal was perfected. Rather than having only the highest and best interests of the child in view, the judgment seems merely a compromise between the antagonistic claims of the mother on the one side and the father and aunt on the other. As said by 1 Pomeroy, Eq. Jr. § 1307:

"There is one fundamental rule, viz., that the exercise of the jurisdiction depends upon the sound and enlightened discretion of the court, and has for its sole object the highest well-being of the infant; it should never, therefore, be influenced by any sentimental considerations of either the mother or the father."

[4] We wish to state in this connection that mere inadequacy of income or even insolvency alone would not justify a court in interfering with the parental custody of a child, but the chief matter to be considered is its intellectual, moral, and religious training. Property questions are secondary to this high essential, and should be considered only as it may render more feasible and offer surer opportunities for the moral and intellectual education and advancement of the child.

[5, 6] Under the common law the father was the natural guardian of the persons of the minor children, and even under the statute of Texas he is the natural guardian of such minor children while the parents live together. Under the statute, when the parents do not live together, their rights are equal, and the guardianship of their minor children "shall be assigned to one or the other, according to the circumstances of each case, taking into consideration the interest of the child alone." Vernon's Sayles' Stats. 1914, art. 4069. So in the case of Legate v. Legate, 87 Tex. 248, 28 S. W. 281, the Supreme Court held:

"The interests of children and of the public, in their morals and education, are superior to the claims of parents; and the latter must yield when they come in conflict."

As said by the Galveston Court of Civil Appeals in Cecacci v. Martelli, 235 S. W. 951:

"It is too well settled to require citation of authority that in cases of this kind the best interest of the child must determine the question as to its custody, and that as a matter of law it is entitled to the benefit of that home and environment which will most likely promote its highest welfare."

The same was held by this court in the case of Davis v. Elkins, 249 S. W. 1099.

[7] One or the other of the contestants as to the custody of the little girl should have full and absolute control of her education, moral training, and physical culture. The object should be to obtain a certain steady and reliable training of the child, and that cannot be obtained by an antagonistic warring authority. This court made its position clear on this question in the case of Castro v. Castellanos, 289 S. W. 104, opinion rendered on November 8, 1926, not yet [officially] published. There is no authority for giving the custody of a child into the hands of two persons holding enmity or ill will towards each other. "It is well settled * * * that a court of equity may interfere on behalf of infants and remove them from the custody and control of their father or mother, whenever the habits, practices, instruction, or example of the parent, exerting a personal influence on the infants, tend to corrupt their morals and undermine their principles; or when the parent is neglecting their education suitable for their condition in life; or is endangering their property; or is guilty of ill treatment or cruelty towards them." Pom. Eq. Jur. § 1307. In order to justify an order to place the custody of the infant in other hands than those of the mother, the court was compelled to conclude that her habits, practices, instruction, or example were such as to not commend her as the guardian of the person of her young daughter. If the facts had justified the conclusion that the mother was a suitable person to have charge of the child, the court should have committed to the mother the exclusive, undisturbed possession of the minor, for full seven days of each week, rather than for Saturday and Sunday. Some one should be responsible for the training in morals and religion, and the proper secular education of the minor, and that great object was not attained by the judgment of the lower court, which divided the responsibility of two families, not even providing for a fixed and certain domicile for the child.

[8] A careful consideration of the evidence embodied in the statement of facts convinces this court that the moral and religious training of the minor, Terry Kennon Jones, will be more judiciously performed, that her habits will be placed on a higher plane, that her physical nature will be better developed, and her mind more fully educated, if she is in the custody of her aunt, Mrs. R. S. Dilworth, and therefore the judgment and orders of the lower court are reversed and set aside, and the custody, care, education, and training of Terry Kennon Jones are given to Mrs. R. S. Dilworth, of Gonzales, Tex., with the provision that the appellee, Mrs. Terry Greenlaw, be permitted to visit said child at such reasonable times as may be deemed best and proper by the custodian of the child.

Reversed and rendered.

## On Motion for Rehearing.

[9, 10] Where consistent with the welfare of the child, it should be given into the custody of a parent rather than to any one else, even though a close relative. As we endeavored to state in clear and forcible language, when a parent is contending for the custody of a child, regardless of financial advantages to be derived for the child by taking it from the custody of the parent, natural ties should prevail, and the mother or father should have the custody of the child, when the character of either is such that the probabilities are that the mother or father is such a character as will impress the child with a love for morality, with respect for law, and a reverence for God and religion. This is the extent of the decision in this case, and, had this court deemed the appellee to be the best person to have charge of the destiny of a girl nine years old, it would unhesitatingly have given her, not a divided authority over the child, but exclusive possession. The recitation in a clause following the judgment of the trial court, and really no part of it, endeavors to justify the divided authority by the unsolicited finding "that it is not true as alleged that the mother of said child, Mrs. Terry Greenlaw, is not a proper person to have the custody, and that it is not true that it would not be to the best interests of said child to award the custody of said child to said mother." If those negative recitals were true, the custody of the child should have been given to the mother regardless of the fact that Mrs. Greenlaw was not living permanently in Texas, and of the fact that the parents of the child are divorced, and of the fact that the child was attending a school in Gonzales. The best interests of the child should have been consulted, and not a residence in Texas, a divorce of the parents, and a school in Gonzales.

No one testified to the fitness of the mother to rear the child, and, on the other hand, the evidence was overwhelming to the effect that she was not a proper person to have the custody and rearing of the child. This court refrained from entering into details of the evidence, out of a desire to not increase and spread the charges, and even now, in spite of the intemperate assertions in the motion for a rehearing that the evidence does not support the conclusions of the court, we will not spread the unsavory details of the evidence upon the records of this court. We merely adhere to our conclusion from all the evidence that the aunt of the child, who is aided and assisted by the father, is the proper person to rear the girl to useful womanhood.

[11] The conclusions as to appellee not being unfit to have custody of the child can have no controlling influence on this court, because they are not such conclusions of

fact as are permitted by article 2208, Rev. Civ. Stats. of 1925. City of Houston v. Kapner, 43 Tex. Civ. App. 507, 95 S. W. 1103; Sewall v. Colby (Tex. Civ. App.) 163 S. W. 694. The fact that such conclusions are placed in the judgment adds no sanctity to them, especially when such conclusions are inconsistent with the judgment rendered.

While the character of the appellee was assailed by several witnesses, no witnesses to sustain her character and reputation were selected out of her large acquaintance in San Antonio to meet the attacks made upon her by witnesses and through letters filled with erotic protestations, and revealing that they were constantly replied to in the same spirit, at a time when the marital relation existed between her and Elliott Jones.

The high character of the father, who is assisting in placing his child with his sister, as well as the character of the sister, Mrs. Dilworth, was sustained by such strong evidence that the court was willing to intrust the custody to her a larger part of the time, up to September 15, 1927, after which time no provisions are made for the custody of the child.

We amend the judgment so as to permit appellee to see the child at least once a month at such time and place as may be agreed upon, and at such other times as may be agreed upon by Mrs. Greenlaw and Mrs. Dilworth

The motion for rehearing is overruled.